DAWN LOVE *v*. R. P. BASS *et al.*[*]

(*Nashville.* December Term, 1921.)

1. ARREST. Sheriff or private person can arrest without warrant one transporting whisky in his presence.

The transportation of sixty gallons of whisky over the public roads of the State was a public offense, though Public Acts 1919, chapter 124, making it a felony, was invalid; so that the person guilty thereof could be arrested without a warrant by the sheriff, or, under Thompson-Shannon Code, section 7002, by a private person, in whose presence the offense was committed. *(Post, pp.* 527, 528.)

Acts cited and construed: Acts 1919, ch. 124.

Code cited and construed: Sec. 6998 (T.-S.)

2. ARREST. Notice of cause of arrest held unnecessary.

Under Thompson-Shannon Code, sections 6998, 7003, requiring notice of cause of arrest except when a person is in the actual commission of the offense, a notice was not essential to a legal arrest of a person who was transporting whisky by automobile and who refused to stop when ordered to do so, so that there was no opportunity to give notice. *(Post, p.* 528.)

Case cited and approved: Lewis v. State, 40 Tenn., 127.

Code cited and construed: Secs. 6998, 7003 (T.-S.)

3. HOMICIDE. Attempt to run down sheriff with automobile held assault with intent to murder.

Where an attempted arrest of an automobile driver by the sheriff was lawful, the attempt of the driver to run down the sheriff with his automobile was an assault with intent to murder, since the

---

[*]For authorities discussing the question of homicide by authority of law or under official direction, see comprehensive note in 67 L. R. A., 292.

Love v. Bass:

attempted arrest would not justify passion reducing the offense to manslaughter if the sheriff had been killed. (*Post, pp.* 528.) 529.)

Case cited and distinguished: Galvin v. State, 46 Tenn., 283.

4. ARREST. All necessary means can be used to prevent "escape" after felony in officer's presence.

· Where an automobile driver had committed the felony of assault with intent to kill, by attempting to run down the sheriff when the latter sought to make a lawful arrest, the sheriff was justified in killing the driver if necessary to prevent his escape in view of Thompson-Shannon Code, section 7000, and the term "escape" is not used in its technical sense as implying previous custody by the officer, but must be understood in its popular sense, which is to flee from, to avoid, to get out of the way. (*Post, p.* 529.)

Case cited and distinguished: Reneau v. State, 70 Tenn., 720.

Code cited and construed: Sec. 7000 (T.-S.)

5. DEATH. Necessity for killing felon held question for jury.

Whether the escape of an automobile driver, who had committed a felony in the sheriff's presence and whose way was almost completely blocked by the sheriff's automobile, could have been prevented without killing the driver, *held* a question for the jury under the evidence. (*Post, pp.* 529, 530.)

6. ARREST. Killing to take felon justified only if necessary.

An officer cannot kill a felon either to capture him or to prevent his escape if with diligence and caution he might otherwise be taken or held. (*Post, pp.* 529, 530.)

Case cited and approved: Jackson v. State, 66 Miss., 95.

7. SHERIFFS AND CONSTABLES. Sheriff is liable for acts of special deputy.

A sheriff is liable for the acts of a special deputy appointed to assist in making a particular arrest, since in the case of a sheriff there is an exception to the general rule that a public officer is not liable for the acts of his deputies. (*Post, pp.* 530, 531.)

Cases cited and approved: Glasgow's Lessee v. Smith, 1 Tenn., 144:

Rose v. Lane, 22 Tenn., 218-220; Vance v. Campbell, 27 Tenn., 527; Robertson v. Lessan, 47 Tenn., 160; Reves v. State, 79 Tenn., 124; State ex rel. v. Slagle, 115 Tenn., 337; Estes v. Williams, 3 Tenn., 413; Todd v. Jackson, 22 Tenn., 398; Lunsford v. Johnston, 133 Tenn., 618.

Code cited and construed: Sec. 448 (S.).

### FROM HAMILTON.

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. OSCAR YARNELL, Judge.

CHAMLEE & CRUTCHFIELD, for plaintiff.

T. POPE SHEPHERD, and C. G. MILLIGAN, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

R. K. Love met his death while undertaking to bring a load of whisky from Georgia into Chattanooga in an automobile. R. P. Bass, who was then sheriff of Hamilton county, and Charles Morrison, who was deputized for the occasion, tried to intercept and arrest Love before he got into the city. During the encounter Love was killed either by Bass or Morrison. Dawn Love, the widow of R. K. Love, has brought this suit against the former sheriff and the surety on his official bond to recover damages for the killing of her husband.

The trial judge directed a verdict in favor of the defendants. The court of civil appeals reversed the judgment of

the court below and remanded the case for trial. The defendants have filed a petition for *certiorari* and the case has been argued in this court.

On the night Love was killed, Morrison obtained information that Clyde Love, brother of deceased, had gone into Georgia in an automobile for the purpose of procuring and bringing back to Chattanooga a load of whisky. Morrison went to the jail and communicated this information to the sheriff. The sheriff, after some conversation, deputized Morrison to go with him, and the two went a few miles out of the city on the Wauhachie road leading into Georgia for the purpose of apprehending Clyde Love as he returned.

The sheriff and Morrison drove out in a Ford car to a point on Lookout Mountain, to where what is known as the Mountain road and the Wauhachie road fork. They parked their car across the Wauhachie road. The road goes around the mountain side at this point. There is a wall on either side of it. When the car was parked across the road there was a space of four or five feet between the ends of the car and the adjacent walls.

After waiting for an hour or more, the sheriff and Morrison heard a car coming from Georgia, which they supposed was the Love car. The sheriff and Morrison stationed themselves on either side of the road, the sheriff somewhat in advance of Morrison, both being between their own car and the approaching car. The sheriff and Morrison were both armed with shotguns. As the car from Georgia approached, the sheriff came out into the road and ordered it to halt. Instead of halting the driver of the car speeded it up and ran it directly at the sheriff. The sheriff jumped out of the way and the driver of the

car then ran it at Morrison. Morrison testified for the plaintiff below and the sheriff in his own behalf. Both of them say that the driver of this car speeded up and attempted to run them down when he was called on to halt, and the effect of their testimony is that they had to jump for their lives.

After passing the sheriff, the driver of the car attempted to run between the end of the parked car and the wall of the road. He accomplished this successfully and got by, bending the fender on the parked car and scraping the wall of the road. After getting through this hole the operator of the car apparently lost control of it and ran it into the wall of the road a few yards below the parked car in the direction of Chattanooga, where the car was halted and wrecked. This car was being operated by the deceased, R. L. Love, and contained sixty gallons of whisky in five-gallon milk cans.

After the whisky car passed the sheriff he fired his gun. After it passed Morrison he fired his gun. The sheriff claims that he shot across the road, not in the direction of the whisky car for the purpose of stopping a car following the whisky car in which Clyde Love, the brother of deceased, and two other men were riding. Morrison claims that he fired at the wheels of the whisky car and that the load from his gun did not go above the wheels.

After the whisky car ran into the wall and was wrecked, Morrison and the sheriff went down there and found that R. K. Love, who was driving, had been killed, shot in the back with a load of heavy shot. The shot went through the rear curtain of the car, as clearly appears from the proof.

Clyde Love and the parties in the second car denied any connection with the whisky car in front of them, and, after stopping them and examining them, the sheriff told them to go on to town. He and Morrison then took the dead man in their own car and brought him into the city.

Although each of them, as seen, denies firing the shot which killed deceased, we think it fairly obvious from the proof that deceased must have been killed either by Morrison or by the sheriff. Morrison was indicted for this killing, but was tried and acquitted in the criminal court of Hamilton county.

The case was tried below when it was supposed that chapter 124 of the Acts of 1919 was a valid law. This statute made the transportation of three gallons of whisky or more a felony, and the defendants justified on the theory that it was permissible to kill Love to prevent the escape of one who had committed a felony.

Later this act was held unconstitutional by this court in the case of *Walters* v. *State,* December term, 1920.

There has been much discussion in the case as to the protection afforded the sheriff and Morrison by the said statute subsequently held void. We think, however, these questions are not material in this case.

In undertaking to bring this quantity of whisky along the public road into the city of Chattanooga, the deceased was violating the laws of the State and committing a public offense. The sheriff and his deputy without a warrant had the right to halt deceased and put him under arrest for this offense committed in their presence. Both of them testified that the sheriff ordered deceased to halt, but that, instead of doing so, he increased the speed of his car and drove right at them. The lights were shining on

the sheriff and deceased probably knew who he was. That, however, is not material, for a private person would have been justified in arresting deceased under the circumstances. Thompson's-Shannon's Code, section 7002.

Section 6998 of Thompson's-Shannon's Code is as follows:

"When arresting a person, the officer shall inform him of his authority and the cause of the arrest, and exhibit his warrant if he have one, except when he is in the actual commission of the offense, or is pursued immediately after an escape."

Section 7003 of Thompson's-Shannon's Code relating to an arrest by a private person is in these words: "He shall, at the time of the arrest, inform the person arrested of the cause thereof, except when he is in the actual commission of the offense, or when arrested on pursuit."

The deceased was not entitled to any notice of the cause of his arrest under these statutes, he being "in the actual commission of the offense," and, moreover, he gave the sheriff and Morrison no opportunity to say anything to him before he drove at them and this would excuse them from giving him any notice before attempting his arrest *Lewis* v. *State,* 3 Head (40 Tenn.), 127, 146.

It follows that the attempt to arrest the deceased was lawful and he was not entitled to resist it. If he had succeeded in running down the sheriff and Morrison with his car and killed either of them, he would have been guilty of murder. Failing to accomplish his purpose, he was guilty of an assault with intent to commit murder.

"But the law does not allow that a lawful arrest is a provocation to passion and heat of blood. And, if the officer had the right, under the circumstances proven,

to make the arrest, and was engaged, using no more force than was reasonably necessary, in accomplishing it, then the killing of him by the defendant would be murder; and the fact that the killing was in the heat of blood caused by a lawful arrest, would not reduce the offense to the grade of manslaughter." *Galvin* v. *State,* 6 Cold. (46 Tenn.), 283, 292.

After the commission of this felony in their presence, the officers were entitled to use all necessary means to effect the arrest and stop the fight of deceased. Thompson's Shannon's Code, section 7000; *Lewis* v. *State,* supra; and *Galvin* v. *State,* supra.

In *Reneau* v. *State,* 2 Lea (70 Tenn.), 720, 31 Am. Rep., 626, the law is declared to be that in order to prevent the escape of one who has committed a felony, an officer will be excused for killing him, if he cannot be otherwise taken.

"The term 'escape' is not to be taken in its technical sense, which would imply, as is argued, that the person was previously in custody of the officer, and had eluded his vigilance. It must be understood in its popular sense, which is 'to flee from, to avoid, to get out of the way,' etc." *Lewis* v. *State,* supra.

If, therefore these officers could not otherwise have stopped the deceased and accomplished his arrest, they were within their rights in killing him.

It is argued for the defendants that deceased could not have been otherwise stopped under the circumstances of the case. The plaintiff insists to the contrary. We forbear a discussion of the evidence, since we think this question should be settled by a jury. An officer has no absolute right to kill, either to take, or prevent the escape of, a prisoner. If with diligence and caution the prisoner

145 Tenn.—34.

might otherwise be taken or held, the officer will not be justified for the killing, even though the prisoner may have committed a felony. *Reneau* v. *State,* supra.

Whether or not there was a reasonable necessity for the killing, and the reasonableness of the grounds upon which the officer acted in killing, are questions for the jury. 5 ·C. J., 425, and cases cited; *Jackson* v. *State,* 66 Miss., 95, 5 South., 690, 14 Am. St. Rep., 542; note 17 Ann. Cas., 900.

It is argued for the defendants that the sheriff cannot be held liable for the acts of Morrison in this affair, if it should appear that Morrison killed the deceased. We have fully considered the ingenious theory advanced, but think that it is opposed to our authorities.

The *status* of a sheriff and his deputies is very accurately set out by Chief Justice NEIL as follows:

"Under our statutes (Shannon's Code, section 448) the sheriff of a county may appoint as many regular and special deputies as he may see proper. It is to be deduced from the section of the Code referred to and from our decisions upon the subject that the sheriff may appoint his deputies for such length of time, within his own term, as he may desire, and the compensation for his services may be arranged by contract between the sheriff and his deputy; that process does not run to the deputy, but to the sheriff, yet the deputy may execute any process so directed that comes to his hands, and he has all of the powers of the sheriff himself in respect thereof, yet if he be guilty of any default, the recourse of the injured party is not upon him, but upon the sheriff, and the latter may look to the deputy for reimbursement. *Glasgow's Lessee* v. *Smith,* 1 Tenn., 144, 152-155; *Rose* v. *Lane,* 3 Humph.,

218-220; *Vance* v. *Campbell,* 8 Humph., 527; *Robertson* v. *Lessan,* 7 Cold., 160; *Reves* v. *State,* 11 Lea, 124." *State ex rel.* v. *Slagle,* 115 Tenn., 337, 89 S. W., 326.

As will be seen from the foregoing a sheriff may appoint a deputy for such a length of time within his own term as may be desired. We think the reasons which render a sheriff liable for the acts of his regular deputies apply with stronger force to the acts of a special deputy.

In the case before us the proof shows that the sheriff specially deputized Morrison to go with him on this occasion to accomplish this arrest. We think there is no doubt but that the sheriff and his surety are liable for the acts of Morrison on this occasion. *Estes* v. *Williams,* 3 Tenn. (Cooke), 413; *Todd* v. *Jackson,* 3 Humph., 398.

The case of *Lunsford* v. *Johnston,* 132 Tenn., 618, 179 S. W., 151, relied on by defendants, which announces the general rule that an officer is not liable for the acts of his deputies, plainly recognizes that an exception to the rule exists in the case of a sheriff and his deputies.

The surety assigns errors here with reference to its liability on the supposition that the sheriff could only justify the killing of Love under the unconstitutional statute referred to. Since in our opinion this statute has no material bearing on the case, these assignments of error are overruled.

For the reasons herein stated, the judgment of the court of civil appeals is affirmed, and this cause remanded to the circuit court of Hamilton county for further proceedings in conformity to our opinion.