**Mary O. SMITH**

v.

**William Lee JONES and William Blaylock.**

**Civ. A. No. 6848.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Oct. 4, 1973.

John B. Wilkes, C. Allen High, George C. Fariss, Nashville, Tenn., for plaintiff.

Larry H. Snedeker, Metropolitan Atty., Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, District Judge.

This is an action for damages brought under 42 U.S.C. § 1983. Plaintiff alleges that defendants deprived her son of his life in violation of the Due Proc-

ess Clause of the Fourteenth Amendment to the United States Constitution. Jurisdiction of this court is properly invoked pursuant to 28 U.S.C. § 1343. Plaintiff also presents a claim for violation of state law. The court in the exercise of its discretion will decide the state claim under its pendent jurisdiction.

Mary O. Smith, the surviving mother of Kenneth Robert Smith, deceased, sues the defendants, two police officers, for the death of her 19-year-old son which occurred in the early morning of March 26, 1972. Plaintiff alleges that her son was killed by reason of the unwarranted and unreasonable use of force by the defendants in shooting her son. The two defendants are and were police officers employed by the Metropolitan Government of Nashville and Davidson County Tennessee, and were on duty at the time material to this action.

After hearing all of the evidence, seeing the witnesses and judging the credibility of their testimony, the court finds and concludes the following.

On the night of March 25, 1972, Kenneth Robert Smith and two other young men were in the parking area of a drinking establishment known as "The Wedge." Certain Metropolitan Nashville-Davidson County police officers left two police cars parked at "The Wedge" and entered the establishment. Kenneth Smith entered one of the police cars and drove it to a location several blocks away. The other two young men followed him in a Chevrolet station wagon. After Smith parked the police car and got into the Chevrolet station wagon, the three individuals left the scene. However, Smith ascertained that he had lost some personal property. The three then returned to where the police car was parked to see if Smith had left the property in the police car. The driver of the station wagon entered the police car, leaving Smith and the other young man in the station wagon. When the defendant policemen arrived at the scene, Smith was in the center of the front seat and the other young man was on the outside right of the station wagon front seat.

Preceding their arrival on this scene, defendants, on duty and dressed in their police uniforms, were patrolling in another area of the city of Nashville in a regularly marked police car. A radio transmission alerted all officers on duty to the disappearance of the police vehicle and requested available units to go to the area of the theft to assist in the location of the car. Defendant requested and received permission to so proceed. On nearing the neighborhood where the stolen vehicle was later located, the driver and a defendant in this suit, William Lee Jones, turned off the headlights of the police car. As the defendant officers searched the neighborhood, they spotted the police vehicle parked against the curb with the Chevrolet station wagon parked beside it in the middle of the street at approximately 12:15 a. m. Jones turned on the headlights of the police vehicle as they approached the station wagon from its front. As the police car approached, one of the occupants of the station wagon (not the deceased) fled on foot.

The police car stopped a few feet in front of, and to the side of, the station wagon. The driver's side of the police car was to the left front of the driver's side of the station wagon. Both defendants alighted, Officer Blaylock from the passenger side and Officer Jones from the driver's side. Before Blaylock could walk around the police car, the incident occurred. Blaylock fired no shots in the subsequent encounter.

Officer Jones stepped in front of the station wagon and advised the two men still at the scene to halt. However, Smith, who had moved to the driver's position in the station wagon, accelerated the vehicle from its stopped position directly towards Officer Jones, even though Officer Jones was clearly visible and was dressed in a policeman's uniform. With the station wagon bearing down on him, Jones, who had drawn his gun on alighting from the police vehicle,

fired two shots through the windshield of the station wagon. He then jumped for safety, but was struck by the vehicle on his left hand. He turned and fired four additional shots towards the fleeing vehicle. Apparently the vehicle became disabled, veered abruptly to the right in a short turn, and the last shot fired may have entered the right front door. Plaintiff asserts that this was the fatal shot.

It is difficult to determine whether the last shot was the fatal shot. The fatal bullet entered the deceased's body on his right side. However, no evidence was introduced as to whether the bullets fired earlier could or did ricochet within the fleeing vehicle.

■ The initial question raised by the defendants is whether or not the defendants' conduct took place "under color of law" as required by 42 U.S.C. § 1983. It is obvious that the defendant policemen were acting under color of law at the time of the incident in question. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

■ The court will deal first with plaintiff's federal claim that defendants violated the deceased's rights under the Fourteenth Amendment to the United States Constitution. If defendants deprived the deceased of his life without the constitutionally required due process of law, then plaintiff is entitled to recover damages under 42 U.S.C. § 1983.

By enacting 42 U.S.C. § 1983, Congress evidenced "a clear congressional policy to protect the life of the living from the hazard of death caused by un-constitutional deprivations of civil rights . . . ." Brazier v. Cherry, 293 F.2d 401, 405 (5th Cir. 1961), cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L. Ed.2d 136 (1961). "It requires the citation of no authority to say that only in certain aggravated circumstances may a law enforcement officer shoot a person whom the officer is attempting to arrest or whom the officer has in his custody." Jackson v. Martin, 261 F.Supp. 902, 905 (N.D.Miss.1966). Further,

"[i]t is well established under the due process clause of the United States Constitution that a person has a federally protected right to be free of unreasonable and unnecessary force at the hands of police officers making otherwise lawful arrests of them." Conklin v. Barfield, 334 F.Supp. 475, 479 (W.D.Mo.1971).

"It is now well established that local law enforcement officers who act under color of state law and who use excessive force in the enforcement of state laws are subject to civil liability under § 1983 as thereby they deprive those so injured of rights guaranteed by the Constitution and laws of the United States." Arroyo v. Walsh, 317 F.Supp. 869, 870 (D.Conn.1970).[1]

■ The court believes that the shooting of the deceased, as unfortunate as it was, was not unreasonable, unnecessary or excessive if the defendant officer had reasonable grounds to believe that deceased had committed a felony, and if the shooting was necessary for his apprehension. Roberts v. Trapnell, 213 F.Supp. 49, 51, n.7 (E.D.Pa.1962).

"At common law, any person, whether policeman or private citizen, was privileged to use *any* force necessary, albeit deadly, to apprehend a fleeing felon if

1. For other cases involving alleged deprivation of civil rights by the use of unnecessary, unreasonable and excessive force, see Williams v. Liberty, 461 F.2d 325 (7th Cir. 1972); McDaniel v. Carroll, 457 F.2d 968 (6th Cir. 1972), cert. denied 400 U.S. 1106, 93 S.Ct. 897, 34 L.Ed.2d 687 (1973); Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970); Kerr v. City of Chicago, 424 F.2d 1134 (7th Cir. 1970), cert. denied 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64 (1970); Collum v. Butler, 421 F.2d 1257 (7th Cir. 1970); Morgan v. Labiak, 368 F.2d 338 (10th Cir. 1966); Eidschun v. Pierce, 335 F.Supp. 603 (S.D.Iowa 1971); Nugent v. Sheppard, 318 F.Supp. 314 (N.D.Ind.1970); McArthur v. Pennington, 253 F.Supp. 420 (E.D.Tenn.1963).

he had cause to believe a felony had been committed." Sauls v. Hutto, 304 F. Supp. 124, 129 (E.D.La.1969).

"Police officers . . . are only liable if they had no probable cause *and* the victim was not actually a felon." *Id.* n. 12.

The court finds that defendant Officer Jones had reasonable grounds to believe that deceased had committed a felony, an attempted homicide. The defendant Officer Jones had probable cause to believe that the deceased had committed the felony of assault with intent to commit second degree murder. T.C.A. § 39–603; Estes v. State, 214 Tenn. 484, 381 S.W.2d 283 (1964); Love v. Bass, 145 Tenn. 522, 238 S.W. 94 (1922).

The court further finds that the shooting was necessary for the apprehension of the deceased. The court finds that it was reasonable for the defendant officer to conclude, under all the circumstances at the time, that the deceased could not otherwise be taken with less drastic means. No evidence was introduced to show that the defendant officers knew that other police officers were present in the immediate vicinity. The defendants could have reasonably assumed that the deceased, who had attempted to run over a police officer in his effort to escape arrest, was a desperate man. If the defendant officer had not shot the deceased under the aggravated circumstances existing, a dangerous, high speed chase through the streets of Nashville would likely have ensued. Such a high speed chase of an apparently desperate man would have endangered the lives of the fleeing felon, the pursuing police officers, and innocent drivers and pedestrians. The defendant officers could reasonably have concluded that the drastic means used were necessary for the apprehension of the deceased. As sad and tragic as the result was, the court holds that the defendant officers did not take the life of the deceased in violation of the deceased's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The rights of the deceased guaranteed by state law are the same, or virtually the same, as federal law under the Due Process Clause of the Fourteenth Amendment.

T.C.A. § 40–808 provides as follows: *"Resistance to officer.*—If, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all the necessary means to effect the arrest."

The authority of an officer in the state of Tennessee to use force in arresting a felon is set forth as follows:

"In arresting for felony, a peace officer or even a private person, acting without a warrant, may, if necessary, kill a felon after he resists or flees, so that he cannot otherwise be taken; but the law does not clothe an officer or private person with authority to arbitrarily judge the necessity of killing, and such a course must be the last resort; and whether or not there was a necessity for killing, and the reasonableness of the grounds upon which the officer or the private person acted, are questions of fact for the jury. [Citations contained therein.]

". . . [T]he rule to be observed in a civilized state, . . . is . . . that neither an officer nor a private person can slay to arrest the nonresisting flight of a felon if he can be otherwise taken. Killing in flight is excusable only when it is shown that the felon cannot be ultimately taken by less drastic means, and that presents a question for determination by the jury." Scarbrough v. State, 168 Tenn. 106, 110, 76 S.W.2d 106, 107 (1934). *See also* Love v. Bass, *supra*, at 96.

■ Given the attempted homicide of defendant Jones, the apparently desperate state of the deceased, and his attempt to escape in the speeding vehicle, the defendants had reasonable grounds to believe that the deceased could not be ultimately apprehended with less violent means. The court finds that the defend-

ant Jones had reasonable grounds to believe the degree of force used was necessary for the apprehension of the deceased.

Accordingly, the court holds that the defendant officers did not use unnecessary, unreasonable or excessive force in the fatal shooting of the deceased, Kenneth Robert Smith. Defendants had lawful authority under state law to utilize the degree of force used in apprehending the deceased.

The court holds that the defendant officers violated none of the rights of the deceased under either federal or state law. This suit is hereby dismissed in its entirety.