Human Rights Commission of Worcester *v.* Assad.

HUMAN RIGHTS COMMISSION OF WORCESTER *vs.* FRANCIS
P. ASSAD & others.[1]

Worcester.    February 4, 1976. — June 14, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN,
& WILKINS, JJ.

*Municipal Corporations,* Human rights, Police, By-laws and ordinances.
  *Human Rights.   Witness,* Subpeona.   *Constitutional Law,* Due pro-
  cess of law.

Where a municipal ordinance which etablished a human rights com-
  mission gave the commission the power and duty to receive and
  investigate complaints of violations of civil rights, a complaint
  charging excessive use of force by police was within the scope of
  the commission's authority to investigate.  [486-487]
An investigation by a human rights commission of a complaint charging
  excessive use of force by police did not violate the separation of
  powers doctrine under art. 30 of the Declaration of Rights of the
  Massachusetts Constitution where the commission was not empow-
  ered to exercise any adjudicatory function.  [487-488]
A municipal ordinance authorizing an investigation by a city's human
  rights commission into a complaint charging excessive use of force
  by police officers did not violate procedural or substantive due pro-
  cess of law where the commission's conclusions could amount to no
  more than findings and recommendations to some other govern-
  mental agency [488]; nor was the ordinance unconstitutionally
  vague or overbroad where it created no new substantive rights or
  burdens but concerned only misconduct which was contrary to ex-
  isting constitutional, statutory or common law requirements [488].
A finding that an individual was guilty of assault and battery on
  police officers did not resolve the question whether the officers used
  excessive force in violation of his civil rights so as to preclude in-
  vestigation by a human rights commission.  [488-489]
Where a human rights commission undertook an investigation into a
  complaint of excessive use of force by police officers, it was entitled
  to enforcement of its subpoenas pursuant to an application in the
  Superior Court under G. L. c. 233, § 10, unless it were shown that
  interrogation of the officers under the subpoenas would result in
  needless harassment of them or some other injustice.  [489]

---

[1] The other defendants are Robert V. Counihan, Paul E. Favreau,
William W. Grady, and Angelo Naples, police officers in Worcester,
and Jay Jackson. The sixth named defendant, Jay Jackson, of Chan-
dler Street, Worcester, is not identified in the record (except as a
witness) and has not participated in the proceedings.

APPLICATION to compel attendance of witnesses filed in the Superior Court on October 17, 1973.

The case was heard by *Meagher, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Richard J. Sarapas* for the plaintiff.

*Philip Collins* for Francis P. Assad & others.

*Robert D. Martin* for the Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

WILKINS, J.   We are concerned here with the extent, if any, to which the plaintiff Human Rights Commission of Worcester (commission) may consider and deal with a complaint alleging that police officers exercised unnecessary force in effecting an arrest.

In April, 1973, Richard and Stanley Stopyra filed complaints with the commission charging the Worcester police department and the five defendant police officers "with unlawful discrimination" against them because of "police brutality" on the night of February 21, 1973. The commission scheduled a hearing on the complaints, and a subpoena was issued to each of the defendants requiring his appearance at the hearing. Counsel for the defendants advised the commission that the defendants would not appear because the commission lacked jurisdiction over the subject matter of the Stopyras' complaints and because, in the circumstances, the commission should not exercise its subpoena power.

The commission filed an application in the Superior Court, under G. L. c. 233, § 10, for an order directing the attendance of each defendant at a hearing on the complaints. The judge ruled that the subject of "police brutality" was not within the jurisdiction of the commission and denied the application. The commission appealed. We conclude that the commission has authority to receive and investigate complaints of excessive use of force by Worcester police officers and to initiate its own investigation into such incidents. The case will be remanded to the Superior

Court to consider whether there are circumstances which would, nevertheless, justify refusal to enforce the subpoenas.

Richard and Stanley Stopyra were arrested at the Korner Pizza Store on Chandler Street, Worcester, on February 21, 1973, and charged with assault and battery on police officers and disturbing the peace. At a trial on these charges in the Central District Court of Worcester on April 3, each of the defendant officers testified concerning the events of February 21, and his testimony was tape-recorded by counsel for the Stopyras. That same day, and before any District Court finding was made, the Stopyras filed separate complaints with the commission charging "police brutality."[2] Each Stopyra was found guilty of assault and battery on two named police officers and guilty of disturbing the peace. The Stopyras appealed to the Superior Court from these findings of guilty.

In June, 1973, a jury trial was held in the Superior Court at which each defendant policeman gave testimony which was recorded stenographically. Richard Stopyra was found guilty of disturbing the peace and of assault and battery on one of the police officers. Stanley Stopyra was found not guilty of disturbing the peace and of assault and battery on a police officer.

Late in June, the commission voted to schedule a hearing on the Stopyras' complaints. The defendants' counsel advised the commission that the defendants would not appear unless directed to do so by a court order. He argued that the judicial proceedings already held concerning the events of February 21 eliminated any jurisdictional basis for issuing the subpoenas. He contended further that the commission should not open itself to vindictive, spurious complaints. He suggested that the commission consider the recorded testimony of the court proceedings rather than summon the defendants. He stated, however, that, if

---

[2] An investigation of the events of February 21, 1973, was conducted by the Worcester police department. The findings were reported to the chief of police and to the city manager in May, 1973, and no disciplinary action was recommended or taken against the defendant policemen.

a court order should direct the defendants to appear, they would attend a hearing before the commission.

In October, 1973, the commission filed its application to enforce the defendants' attendance, and the defendants answered opposing the application and filed a motion to quash the subpoenas. In November, 1973, the judge denied the commission's application and allowed the motion to quash the subpoenas.[3] The judge did not pass on any constitutional objection raised by the defendants but ruled in the defendants' favor on the ground that the commission "has no right per se to pursue naked police brutality complaints." The judge's ruling was based on a question of law and not based on an exercise of his discretion under G. L. c. 233, § 10. We transferred the commission's appeal here from the Appeals Court on our own motion.

We learned at oral argument that the Stopyras have commenced an action under 42 U.S.C. § 1983 (1970), and other Federal statutes, in the United States District Court, District of Massachusetts, against each of the defendant police officers. The complaint, filed in February, 1975, seeks "compensatory and exemplary damages for the deprivation of rights, privileges, and immunities secured by the Fourteenth Amendment to the Constitution of the United States." *Stopyra* v. *Naples* No. CA 75-598-S.

In *Bloom* v. *Worcester,* 363 Mass. 136 (1973), we upheld the ordinance which sets forth the commission's powers and duties. See Worcester Rev. Ordinances c. 2, art. 23, as adopted February 2, 1971 (the ordinance). We had no occasion, however, to consider the meaning of the words "civil rights" as used in the ordinance. The issue in the *Bloom* case was whether there was any inconsistency or conflict between the ordinance and general laws concerned with discrimination because of "race, color, religious creed, national origin, sex, age, or ancestry." *Id.* at 144,

---

[3] The grounds of the motion to quash which the judge accepted were that (a) the subpoenas were issued for purposes beyond the scope of the commission's jurisdiction and (b) the subpoenas were "oppressive and cannot secure from the [defendants] any information in aid of its investigation which is not already available."

147-148. See G. L. c. 151B, § 4, and § 5 (1) (a) of the ordinance, where these words also appear. The Stopyras' complaints do not assert discrimination on any such ground. The printed form provided by the commission for the registering of complaints implies that complaints should be based on discrimination against the complainant. It lists for selection by the complainant as the reason or reasons for the alleged discrimination each of the grounds quoted above (race, color, religious creed, national origin, sex, age, or ancestry) and adds "Other ( )." The Stopyras marked "Other (x)" and added the words "Police Brutality." The commission apparently assumed that the grounds for the complaints to it were not limited to discrimination based on "race, color, religious creed, national origin, sex, age, or ancestry." On the other hand, the presence of the word "discrimination" on the form, as a suggested requirement for any complaint, does not readily fit an assertion of "police brutality."[4]

We agree with the commission that it has authority, on its own initiative or on specific complaint, to investigate allegations that the police used excessive force in making an arrest. Section 5 of that ordinance, quoted in full in n.2 at 138-141 of the *Bloom* opinion, provides in part that the commission has the power and duty "[t]o receive and investigate complaints of, and to initiate its own investigation of . . . (c) violation of the enjoyment and exercise by any person or group of his or its civil rights . . . ." The policy of the city, expressed in § 1 of the ordinance, in-

---

[4] The record does not contain any instruction on the "legislative history" of the ordinance. We know from its terms that the 1971 vote adopting the ordinance substituted a new art. 23 in c. 2 of the Revised Ordinances of 1951. However, the earlier art. 23 is not before us. The plaintiffs' brief in the *Bloom* case purported to set forth (in an appendix) the prior art. 23, apparently adopted in 1968. That article established an advisory human rights committee and expressed a policy of equal opportunity and access irrespective of "race, color, creed, religion, national origin or ancestry." The scope of the new article is broader, not only reaching discrimination based on sex and age, but also seeking to protect the enjoyment of "civil rights," words not appearing in art. 23 as adopted in 1968.

cludes an intention "to protect each individual in the enjoyment of his civil rights." Although the ordinance also speaks of assuring equal rights in employment, housing, education, recreation, and public accommodations regardless of "race, color, religious creed, national origin, sex, age or ancestry," the jurisdicition of the commission is not limited to these subjects. Any violation or alleged violation of "civil rights" may be the subject of investigation by the commission.

The excessive use of force by a police officer acting under color of law is a violation of the "civil rights" of any victim of that police action. *Arroyo* v. *Walsh,* 317 F. Supp. 869, 870, 873 (D. Conn. 1970). *Jackson* v. *Martin,* 261 F. Supp. 902, 903-904 (N.D. Miss. 1966). See *Johnson* v. *Glick,* 481 F.2d 1028, 1030 (2d Cir. 1973) (prison guards); *Byrd* v. *Brishke,* 466 F.2d 6, 10-11 (7th Cir. 1972) (supervisory officers); *Wiltsie* v. *California Dep't of Corrections,* 406 F.2d 515, 517 (9th Cir. 1968) (prison guards); *Smith* v. *Jones,* 379 F. Supp. 201, 203 (M.D. Tenn. 1973), aff'd, 497 F.2d 924 (6th Cir. 1974). Cf. *Pierson* v. *Ray,* 386 U.S. 547, 554-555 (1967); *Monroe* v. *Pape,* 365 U.S. 167, 191 (1961). We conclude that the subject of the excessive use of force by a policeman may be investigated by the commission.

There is no constitutional barrier to the commission's conducting an investigation of an alleged violation of civil rights caused by a police officer's use of excessive force. That investigation is not a function which, under art. 30 of the Declaration of Rights of the Massachusetts Constitution, can be conducted only by the judicial branch of government. Numerous legislative and executive investigations are conducted and determinations made concerning alleged misconduct of public employees on subjects which may ultimately come before the courts, without running afoul of the doctrine of the separation of powers. The commission exercises no adjudicatory powers because it "has no authority to determine violations of substantive rights." *Bloom* v. *Worcester, supra* 158. It may "attempt

by mediation to resolve any complaint over which it has jurisdiction and to recommend to the City Manager or other appropriate governmental agency, federal, state or local, such action as it feels will resolve any such complaint." § 5 (2) of the ordinance. However, in making findings and recommendations, the commission cannot make a binding determination that a crime, a tort, or any other actionable event has occurred.

Procedural and substantive due process of law would not be denied by the application of the ordinance to the conduct of policemen. There is no suggestion that the commission can discipline the defendants or that they might be disciplined by others without any constitutionally required hearing. See *Stetson* v. *Selectmen of Carlisle,* 369 Mass. 755 (1976). Due process does not require judicial review of the commission's conclusions based on its investigation, which can amount to no more than findings and recommendations to some other governmental agency.[5]

The ordinance is neither vague nor overbroad. It creates no new substantive rights or burdens and concerns only misconduct which is contrary to existing constitutional, statutory, or common law requirements. Cf. *Beech Grove Inv. Co.* v. *Civil Rights Comm'n,* 380 Mich. 405, 419 (1968).

The matter of alleged excessive use of force by the defendant police officers was not resolved by the completed criminal prosecutions against the Stopyras. Even a finding that each Stopyra was guilty of assault and battery on each of the defendant police officers would not have settled the question of the excessive use of force by those police officers. The defendants may still have used more force than was reasonably necessary to effect the arrests. See *Clark* v. *Ziedonis,* 513 F.2d 79, 81-83 (7th Cir. 1975); *Palmer* v. *Hall,* 380 F. Supp. 120, 126-127 (M.D. Ga.

[5] If some action of the commission did raise a question of the defendants' constitutional rights, judicial relief is not foreclosed. See *Stetson* v. *Selectmen of Carlisle, supra* at 758. We express no opinion on the defendants' suggestion that a commission finding or determination would be admissible in civil service proceedings against a police officer.

1974), modified, 517 F.2d 705, 707 (5th Cir. 1975); *Love* v. *Davis,* 353 F. Supp. 587, 591 (W.D. La. 1973). Cf. *Commonwealth* v. *Phelps,* 209 Mass. 396, 410 (1911); *Smith* v. *Jones,* 379 F. Supp. 201, 203-204 (M.D. Tenn. 1973), aff'd, 497 F.2d 924 (6th Cir. 1974).

The commission is thus entitled to the enforcement of its subpoenas unless reason to the contrary is made to appear to the judge below. Such reason would be shown if interrogation of the defendant officers under the subpoenas was bound to result in needless harassment of them or in some other injustice. The judge may weigh the fact that each defendant has already testified, under oath and subject to cross-examination by counsel for the Stopyras, both in the District Court and the Superior Court.[6] The fact that the criminal proceedings against the Stopyras did not and could not resolve the question of possible misconduct by the defendants, and that the defendants could still be proceeded against civilly or criminally, while not itself preclusive of further inquiry by the commission, is a factor for consideration either as to the enforcement of the subpoenas or with regard to limiting the scope of interrogation to be permitted under them. See *Bloom* v. *Worcester, supra* at 161. As we have previously noted the Stopyras have commenced Federal court action against all five defendants, asserting violations of their civil rights under 42 U.S.C. § 1983 (1970). Whether they actually intend to pursue dual avenues of relief simultaneously will be a matter of some interest. See G. L. c. 151B, § 9, as amended through St. 1974, c. 478, relating to the Massachusetts Commission Against Discrimination. So, too, the judge will no doubt wish to know whether the commission's concern with the complaints continues.

The order denying the application to enforce is vacated

---

[6] The statement of agreed facts does not show whether the commission has obtained a recording or a transcript of those judicial proceedings. Without obtaining them, as counsel for the defendants suggested the commission should, the commission may not be in as good a position as it might be to argue that the circumstances require the presence of the defendants before it.

and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*