CATHERINE P. KOPYCINSKI, administratrix,[1] *vs.* BERNARD
ASERKOFF & others.[2]

Suffolk. April 1, 1991. - June 18, 1991.

Present: LIACOS. C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Medical Malpractice*, Tribunal, Hospital. *Negligence*, Medical malprac-
tice, Doctor, Hospital.

A judge sitting as a member of a medical malpractice tribunal was with-
    out power to rule that the plaintiff's offer of proof was sufficient to raise
    a legitimate question of liability appropriate for judicial inquiry, where
    a majority of the tribunal found otherwise. [412-416] ABRAMS, J.,
    concurring.
A plaintiff's offer of proof before a medical malpractice tribunal, which
    included a medical expert's affidavit expressing the opinion that the
    failure to diagnose and treat the decedent for an inguinal hernia fell
    below the standard of care of the average qualified practitioner and
    that each of the physicians participating in the decedent's care was re-
    sponsible for his death, was sufficient to raise a legitimate question of
    liability appropriate for judicial inquiry. [416-418]
The question whether a hospital was responsible for the allegedly negligent
    conduct of individual physicians was beyond the competence of a medi-
    cal malpractice tribunal. [418-419]


CIVIL ACTION commenced in the Superior Court Depart-
ment on November 20, 1989.

After the case was considered by a medical malpractice
tribunal, leave to prosecute an interlocutory appeal was
granted in the Appeals Court by *Joseph P. Warner*, C.J. The
Supreme Judicial Court transferred the case on its own
initiative.

---

[1]Of the estate of Joseph V. Kopycinski.

[2]Lawrence C. Wood, Cyrus C. Hopkins, John Doe, Richard Doe, and
Massachusetts General Hospital.

*Raymond J. Kenney, Jr.* (*Mary T. Gibbons* with him) for the defendants.

*Enid M. Starr* for the plaintiff.

NOLAN, J. Today we are asked to address the relationship among the three members of a medical malpractice tribunal convened pursuant to G. L. c. 231, § 60B (1988 ed.). Specifically, we are faced with the question whether the decision of a medical malpractice tribunal as to the sufficiency of a plaintiff's offer of proof must conform to the conclusion of the tribunal's judicial member, in spite of the contrary views of the medical and legal members. We rule that the decision of a majority of the panel members shall determine the finding of the tribunal. Therefore, the judge sitting as a member of the tribunal was without power to rule that the plaintiff's offer of proof was sufficient to raise a legitimate question of liability appropriate for judicial inquiry where a majority of the panel found otherwise. However, since the issue is fully briefed and legitimately before us, we take this opportunity to review the offer of proof made by the plaintiff. We determine that the plaintiff's offer of proof was sufficient and that the plaintiff should have been allowed to proceed without posting a bond, consistent with the decision entered. We, therefore, affirm.

The plaintiff's claim arises from the treatment of the plaintiff's husband, the decedent Joseph V. Kopycinski, while he was a patient at Massachusetts General Hospital (MGH). On December 31, 1986, the decedent went to MGH's emergency ward complaining of vomiting, inability to eat, and excessive weight loss. The decedent was examined by defendant Hopkins, who admitted the decedent to the hospital. Thereafter, Dr. Hopkins consulted with Dr. Aserkoff, also a defendant, as to the decedent's treatment. Dr. Aserkoff's notes concerning the decedent appear throughout the medical records. Dr. Aserkoff ordered a number of tests, including an abdominal CT-Scan, to determine the cause of the decedent's condition. Although the CT-Scan showed evidence of an inguinal hernia, the defendant physicians allegedly failed to

determine that the hernia was the cause of the decedent's medical problems.

On January 6, 1987, less than twenty-four hours before his death, the defendant doctors obtained a surgical consultation from Dr. Carter. Dr. Carter recommended an exploratory laparotomy after the decedent's condition was stabilized. On January 7, 1987, the decedent died while an inpatient at MGH.

On November 20, 1989, the plaintiff, Catherine Kopycinski, filed a complaint for medical malpractice against the defendants. The complaint alleged that the defendants had failed to properly identify and treat the decedent's medical condition, and that the decedent suffered damages as a result of this failure. On March 26, 1990, a medical malpractice tribunal (tribunal), convened pursuant to G. L. c. 231, § 60B, to review the plaintiff's offer of proof. The tribunal consisted of a physician, an attorney, and a judge of the Superior Court. The attorney and the physician found in favor of each defendant. The judge, however, overruled the majority, stating that, as a matter of law, the plaintiff's offer of proof was sufficient. The judge then ordered that the plaintiff could proceed with her case without posting a bond.

The defendants filed a petition pursuant to G. L. c. 231, § 118 (1988 ed.), for interlocutory review of the tribunal's findings. A single justice of the Appeals Court granted leave to the defendants to file this interlocutory appeal. We transferred the case on our own motion. We determine that the judicial member of the tribunal had no power to overrule the decision of the majority of the panel.

General Laws c. 231, § 60B (1988 ed.), provides for the screening claims of medical malpractice by a tribunal. The statute states, in part, that "[e]very action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth under the provisions of section two of chapter one hundred and twelve and an attorney authorized to practice law in the commonwealth, at which hearing the plaintiff

shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." The statute provides that, if the tribunal finds for the defendant, the plaintiff may pursue the claim through the regular judicial process, but only upon filing a bond in the amount of $6,000.

The plaintiff argues that the question which the tribunal is ultimately asked to resolve is a legal one and, thus, solely within the purview of the judicial member of the tribunal. The defendants rely on our decision in *Paro* v. *Longwood Hosp.*, 373 Mass. 645 (1977), arguing that the question for the tribunal is not a legal question and should be decided by the majority vote of the tribunal. We agree with the defendants. The question to be decided ultimately by the tribunal is a factual one. The plain meaning of the statute, and the legislative guidelines for interpreting statutes which involve tribunals, make it clear that the Legislature intended that a majority vote of the tribunal would determine whether a plaintiff's offer of proof is sufficient.

The words of the statute themselves suggest that the tribunal's decision is a factual and not a legal determination. Words such as "legitimate" and "appropriate," which are used to describe the standard of proof, suggest determinations of fact. Moreover, the statute repeatedly refers to the "finding" of the tribunal, once again suggesting that the task of the tribunal is a fact-finding mission. Perhaps most telling is the "either," "or" language used in the framing of the tribunal's task. The tribunal determines whether the evidence is "sufficient to raise a legitimate question of liability appropriate for judicial inquiry *or* whether the plaintiff's case is merely an unfortunate medical result" (emphasis supplied). Surely the determination whether a medical result is merely "unfortunate" is not a legal determination. The plain meaning of the words used within the statute suggests that the task of the tribunal is fact-finding, for which the judicial

member is no better equipped than the legal or medical member.

Furthermore, the Legislature has issued clear rules as to how a statute such as c. 231, § 60B, is to be interpreted. General Laws c. 4, § 6 (1988 ed.), provides that, unless such a construction would be "inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute . . . . [w]ords purporting to give a joint authority to, or to direct any act by, three or more public officers or other persons shall be construed as giving such authority to, or directing such act by, a majority of such officers or persons." It is clear from this statute that the Legislature intended that, by setting up a tribunal in G. L. c. 231, § 60B, and stating "*said tribunal shall determine* if the evidence presented . . . is sufficient," that a majority vote of the tribunal members would determine the decision of the tribunal (emphasis added).

The plain meaning of the language "said tribunal shall determine" says that the tribunal as a whole, and not one particular member, shall make the determination. When the Legislature intended for the judicial member to have specific powers with regard to the tribunal, it said so explicitly. For instance, § 60B provides that the judge is to select the health service professional and the attorney who are to serve as co-members on the tribunal; the section also provides that the judicial member may increase or decrease the amount of the bond to be filed.

We note that the judicial member of the tribunal would certainly be solely responsible for deciding purely legal issues. In *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 656-657 (1977), we rejected the plaintiff's argument that the tribunal statute violated art. 30 of the Massachusetts Declaration of Rights because it allows the two lay panel members to override the judge in the decision of legal issues. The *Paro* court stated that "[t]he lawyer and the health service representative are placed on the panel because of their expertise in relevant fields. This expertise is useful in deciding *the primary question* faced by the tribunal — whether the plaintiff has

presented a legally sufficient claim. As to the determination of *this issue*, the tribunal decision is a *collective one*, with all three panel members participating equally. The responsibility for deciding purely legal questions, however, is left solely with the judge-member of the tribunal, and thus no interference with his function occurs." (Emphasis supplied.) *Id.* at 657. The proposition set forth in *Paro* is that the primary question the tribunal must answer is not a legal question and is, therefore, to be decided collectively by the panel members, with all three as equal participants. Decisions such as the admissibility of evidence proffered to the tribunal would fall into the purely legal category to be determined by the judicial member only.

One year later, in *Little* v. *Rosenthal*, 376 Mass. 573 (1978), we clarified the standard by which the tribunal is to judge the plaintiff's offer of proof. We determined that the language set forth in the statute that the tribunal was to "determine if the evidence presented . . . is sufficient to raise a legitimate question of liability appropriate for judicial inquiry" or whether the plaintiff's case is merely an unfortunate medical result made it "clear that the tribunal's mandate is to evaluate evidence." *Id.* at 578. Therefore, we determined in *Little* that, in light of this language, the tribunal's task is *comparable to* a trial judge's function in ruling on a motion for a directed verdict.

The plaintiff contends that *Little* set forth the proposition that the tribunal's standard is that of a motion for a directed verdict and, since this is a legal standard, the judge should make the final decision. We disagree. We stated in *Little* that the standard by which a tribunal would evaluate evidence could be "compared to" the standard for a directed verdict. We did not say that the standards were one and the same. Indeed, in *Little*, we were merely attempting to clarify the standard in light of an erroneous argument that the standard was the equivalent to that for a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). *Little* v. *Rosenthal, supra* at 578. In substance, we said that the standard which the tribunal shall use is closer to a motion for a

directed verdict standard than it is to a rule 12 (b) (6) standard.

Moreover, our decision in *Broadard* v. *Hubbard Regional Hosp.*, 388 Mass. 1012 (1983), supports our determination that the tribunal must come to a decision as a whole. In *Broadard*, the judicial member felt that it was clear that the offer of proof would be sufficient to raise a legitimate question of liability appropriate for judicial inquiry, and that he intended to find for the plaintiff. Therefore, the judge did not convene the tribunal, seeing it as a "needless exercise." We reversed the judge's decision stating that, even though the judge was certain, the statute called for an interplay among the judicial, legal, and medical members. Here, we determine that c. 231, § 60B, not only requires a convening of the tribunal, but also an interplay in which all three members play an equal role in determining the outcome.

General Laws c. 231, § 60B, is to be read so as to require a determination by a majority vote of the panel. To determine that the very question that the tribunal is convened to answer is a legal question, purely for the judge member to decide, would be repugnant to the plain meaning of the statute, to the statutory rules of construction set forth by the Legislature, to our decision in *Paro* which states the decision is to be collective, and to a commonsense reading of the statute. In sum, the judicial member of the tribunal had no power to overrule the determination of the other panel members and decide that the plaintiff had offered enough proof to proceed without posting a bond.

However, since the issue is properly before us, we will review the offer of proof that was made by the plaintiff to determine its sufficiency.[3] The plaintiff argues that, even if the

---

[3]The issue of sufficiency of the evidence is properly before the court. The plaintiff argues that, even if the judge were incorrect as to the authority of the panel, he was correct on the sufficiency of the offer of proof. "A party who prevails in the Superior Court may present on appeal any ground which was previously asserted below. . . ." *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 (1977). Thus, the plaintiff is entitled to have the court consider this issue.

judge were incorrect as to the authority of the panel, he was correct on the sufficiency of the offer of proof. We agree that the offer of proof was sufficient.

"A plaintiff's offer of proof as to negligence will prevail before a malpractice tribunal . . . (1) if a doctor-patient relationship is shown, (2) if there is evidence that the doctor's performance did not conform to good medical practice, and (3) if damage resulted therefrom." *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980). The defendants' answer admits the allegation of the complaint that they all "rendered medical care and treatment to Joseph V. Kopycinski while he was an in-patient at the Massachusetts General Hospital." Thus, the first prong of the test is satisfied. As to the second and third prongs, the defendants contend first that the plaintiff's expert relied on erroneous factual assumptions in forming his opinion that negligence occurred, and second that the plaintiff did not offer sufficiently particularized proof as to each one of them to establish individual liability.

The plaintiff's offer of proof included an affidavit of a surgeon, Dr. Richard E. Kessler. Dr. Kessler opined that the failure to diagnose and to treat the decedent for an inguinal hernia fell below the standard of care of the average qualified practitioner and caused his death. Specifically, he stated that the treating physician should have (1) diagnosed a hernia as the cause of the lump in the groin, (2) diagnosed an inguinal hernia as the cause of the bowel obstruction, (3) called for an early surgical consultation, (4) performed an exploratory laparotomy, and (5) put a tube into the decedent's stomach. The defendants contend that Dr. Kessler's conclusions are based on erroneous factual assumptions because (1) there is evidence in the medical records that an inguinal hernia was diagnosed, and (2) the physicians did obtain a surgical consultation. The plaintiff responds that it was the failure to diagnose the hernia as the cause of the symptoms, not the failure to diagnose it at all that constitutes the alleged negligence; and that it was the failure to obtain an *early* surgical consultation that fell below the requisite standard of care. In any event, on a directed verdict standard,

the evidence must be viewed in the light most favorable to the plaintiff. Any factual dispute as to the "meaning" of the record is for the jury. But even assuming the defendants' argument is meritorious, Dr. Kessler identified two other instances of negligence — the failure to do an exploratory laparotomy and the failure to put a tube in the decedent's stomach. Thus, we reject the contention that the offer of proof fails because it is based on erroneous factual assumptions.

The defendants also contend that the plaintiff did not offer sufficiently particularized proof as to the negligence of each defendant individually. Dr. Kessler's affidavit asserts that "each of the physicians at the Massachusetts General Hospital who participated in Mr. Kopycinski's care and treatment and the decision-making concerning his diagnosis and treatment was responsible for the delays referred to and for his death." The defendants contend that the failure to identify each of them by name and to state specifically which acts of theirs were negligent renders the offer of proof insufficient.

The affidavit states that *each* of the physicians participating in the decedent's care was responsible for his death. The defendants have admitted that they rendered medical care to the decedent. Contrast *Grassis* v. *Retik*, 25 Mass. App. Ct. 595, 604 (1988) (upholding directed verdict in favor of admitting physician who took no part in care of patient). Thus, the second prong of the sufficiency test is satisfied because there is evidence that each of them, as physicians participating in the decedent's care, "did not conform to good medical practice." The third prong also is satisfied because the affidavit states that the failure to diagnose and treat the decedent for an inguinal hernia caused his death. Therefore, we hold that the two panel members erred in deciding that the plaintiff's offer of proof in regard to the three physician defendants is not sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

The defendant Massachusetts General Hospital claims that the plaintiff's offer of proof is insufficient as to it because she "has produced no evidence of negligence on the

part of an employee, agent, or servant" of the hospital. "The question whether the individual defendant was a person for whose conduct the defendant hospital would be responsible [is] beyond the competence of the tribunal." *Flagg* v. *Scott*, 9 Mass. App. Ct. 811, 812 (1980). See *DiGiovanni* v. *Lattimer*, 390 Mass. 265, 272 (1983). The plaintiff alleged that a "John Doe" or "Richard Roe" was negligent and was an agent or employee of the hospital. She has also made a sufficient offer of proof of the physician defendants' negligence. The question of their relationship to the hospital is one to be sorted out at trial.

In sum, we hold that the tribunal's determination is to be decided by a majority vote. However, we determine that the offer of proof was sufficient. The decision entered below by the judicial member of the panel was that the offer of proof was sufficient for the plaintiff to proceed without posting a bond. We affirm that decision, and remand the case to the Superior Court.

*So ordered.*

ABRAMS, J. (concurring). I agree with the court that G. L. c. 231, § 60B (1988 ed.), directs a medical malpractice tribunal to make a collective determination of the sufficiency of a plaintiff's offer of proof, and that the judicial member of the panel may not overrule the decision of the other two. I also agree that this statutory scheme is not an improper interference with the judicial power in violation of art. 30 of the Massachusetts Declaration of Rights. I disagree, however, with the court's reasoning which, in my opinion, unnecessarily confuses the legal standards under which these tribunals are to operate.

As the court points out, *ante* at 413-414, the plain language of the statute ("said tribunal shall determine if the evidence presented . . . is sufficient"), read in conjunction with G. L. c. 4, § 6 (1988 ed.) (directing that when statutes confer authority on three or more persons the authority is to

be exercised by majority decision), clearly indicates that the medical malpractice tribunal's decision is to be collective. Instead of relying on this straightforward interpretation of the statute, however, the court attempts to buttress its holding by characterizing the tribunal's decision as a factual rather than legal determination. Apparently the court is trying to fit its interpretation of the statute into the legal framework set up in *Paro* v. *Longwood Hosp.*, 373 Mass. 645 (1977), in response to the art. 30 challenge posed therein. I disagree with this effort.

First, attempts to draw a coherent distinction between factual and legal determinations (to mention nothing of mixed questions of fact and law) historically have been illusory. See 5 K.C. Davis, Administrative Law § 29.9, 365-369 (2d ed. 1984); Levin, Identifying Questions of Law in Administrative Law, 74 Geo. L.J. 1, 9-12 (1985). The distinction can be both manipulable and conclusory. See *State ex rel. Wisconsin Inspection Bureau* v. *Whitman*, 196 Wis. 472, 498 (1928) (noting that in an attempt to modify strict separation of powers doctrines, courts have used "the guise of power to find facts" to uphold laws delegating judicial power). The case at bar illustrates the difficulties in separating questions of fact from questions of law. The court holds, *ante* at 415, that the decision whether the offer of proof " 'is sufficient to raise a legitimate question of liability appropriate for judicial inquiry' or whether the plaintiff's case is merely an unfortunate medical result" is a question of fact. G. L. c. 231, § 60B. To me, the decision is more analogous to a conclusion of law — the tribunal is not asked to determine what the defendants did, but whether what the plaintiff offers to prove they did meets some standard of sufficiency. Obviously reasonable people can and do differ on whether a given question is one of law or fact. Thus, not only is its value as a guidepost questionable, but the distinction lends itself too readily to result-oriented analysis.

Second, the court's insistence on the law-fact distinction needlessly confuses the task before the tribunal. Our cases have strived to clarify the standard to be applied by the tri-

bunal in determining sufficiency. See *Blood* v. *Lea*, 403 Mass. 430, 433 (1988) ("the tribunal must use the same standard that a judge would use 'in ruling on a defendant's motion for directed verdict' "), quoting *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978); *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980) (setting forth three-part test to determine the sufficiency of the offer of proof). This effort was not gratuitous; it was intended to set forth sufficient guidance for malpractice tribunals so that their decisions would not be arbitrary, and so that the standards applied by different tribunals to different plaintiffs would approach uniformity as nearly as possible. I fear that the court's opinion undermines that effort. Its characterization of the tribunal's task as a fact-finding mission suggests a much higher discretionary role for the panel than I believe the Legislature intended.[1] The court's attempt to disavow the directed verdict standard leaves one in the dark as to what standard a tribunal should apply. In short, the opinion weakens the very safeguards that have established the fairness and efficiency of the procedure.

Third, relying as *Paro* did on a distinction between questions of law and questions of fact to determine whether judicial power has been improperly delegated is misguided. Agencies adjudicate disputes all the time, determining "legal rights, duties or privileges." See G. L. c. 30A, § 1 (1) (1988 ed.). The classification of agency action into legal or factual categories does not aid in a determination whether the action is an improper exercise of judicial power. Thus, the mere fact that the tribunal may or may not be making a factual determination does not determine the constitutionality of its actions.

---

[1]The flaw in the court's analysis is illustrated most clearly by the court's review of the offer of proof. The court correctly sets forth the facts in the light most favorable to the plaintiff and then applying the appropriate standard (directed verdict) to the facts, the court concludes that the offer of proof was sufficient. The court's analysis of sufficiency of the offer of proof is consistent with my reasoning, not with the factual-legal distinction relied on by the court in its opinion.

I would uphold the tribunal procedure simply because the panel does not usurp judicial powers. The panel " 'has no authority to determine violations of substantive rights.' . . . [It] cannot make a binding determination that a crime, a tort, or any other actionable event has occurred." *Human Rights Comm'n of Worcester* v. *Assad*, 370 Mass. 482, 487-488 (1976), quoting *Bloom* v. *Worcester*, 363 Mass. 136, 158 (1973). See *Commonwealth* v. *Jackson*, 369 Mass. 904, 921-922 (1976) (no separation of powers violation where statute does not interfere with "inherent judicial power"). The major impact that a panel decision may have on a plaintiff is to make it more difficult and risky for her to pursue her claim. See G. L. c. 231, § 60B (if panel finds for defendant, plaintiff may pursue the claim in court only upon filing of $6,000 bond payable to defendant for costs if defendant prevails). In order to keep this burden within reason, the judge has discretion to reduce the amount of the bond required in cases of indigency. See *id.*; *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464, 469 (1980) (abuse of discretion not to reduce sufficiently the amount of bond for indigent plaintiff). Moreover, the panel's decision is subject to judicial review, either before trial or on appeal. See *McMahon* v. *Glixman*, 379 Mass. 60, 63-64 (1979).[2] These safeguards help to ensure that whatever adjudicatory discretion the panel does have is sufficiently insulated from arbitrariness. See *Arlington* v. *Board of Conciliation & Arbitration*, 370 Mass. 769, 776 (1976) (statutory guidelines, standards, and procedures "protect against arbitrary action and provide also a proper occasion for delegation" to an arbitration panel of private individuals). Clearly the panel does not exercise the kind of power to make binding adjudications of substantive rights that would implicate art. 30.

A review of the cases from other jurisdictions considering the constitutionality of medical malpractice screening tribu-

---

[2]Indeed, the court's characterization of the issue decided by the tribunal as one of fact might tend to diminish our standard of review on appeal, because we usually review determinations of fact much more deferentially than conclusions of law.

nals confirms my view that the law-fact distinction is not relevant to the art. 30 inquiry. Only one State has invalidated the procedure on separation-of-powers grounds, and the perceived constitutional flaw was not that the panel determined questions of law. See *Wright* v. *Central Du Page Hosp. Ass'n*, 63 Ill. 2d 313 (1976).[3] The overwhelming majority of courts that have considered the question have held that the procedure is not an unconstitutional interference with judicial power. Their holdings are not based on the panels' role in finding facts as opposed to determining law. Rather, these courts usually rely on the fact that the panel determination is not a final adjudication of the parties' rights. See *Keyes* v. *Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 355-357 (Alaska 1988); *Eastin* v. *Broomfield*, 116 Ariz. 576, 582 (1977); *Lacy* v. *Green*, 428 A.2d 1171, 1178 (Del. Super. Ct. 1981); *Kranda* v. *Houser-Norborg Medical Corp.*, 419 N.E.2d 1024, 1036 (Ind. Ct. App. 1981); *Attorney Gen.* v. *Johnson*, 282 Md. 274, 283-290 (1978); *Prendergast* v. *Nelson*, 199 Neb. 97, 110 (1977); *Suchit* v. *Baxt*, 176 N.J. Super. 407, 423-426 (1980); *Comiskey* v. *Arlen*, 55 A.D. 2d 310-311 (N.Y. 1976), aff'd, 43 N.Y.2d 696 (1977); *Simon* v. *St. Elizabeth Medical Center*, 3 Ohio Op. 3d 164, 170 (1976); *State ex rel. Strykowski* v. *Wilkie*, 81 Wis. 2d 491, 520-522 (1978).

---

[3]The *Wright* opinion disapproved of the nonjudicial panel members' being "vested with authority, equal to that of the judge, to determine and apply the 'substantive law.' " *Wright, supra* at 322. Nevertheless, a later case in the same court reviewing the legislative revision of the law in response to *Wright* makes clear that it was not merely the nonjudicial members' role in making legal as opposed to factual determinations that was offensive. The revised law clearly assigned to the judge the sole responsibility for determining all questions of law. Yet the court again struck down the procedure merely because the judge had to share some authority — even if only fact-finding authority — with nonjudicial personnel. See *Bernier* v. *Burris*, 113 Ill. 2d 219 (1986). The approach of the Illinois court has been strongly criticized by courts and commentators alike as rigid, conclusory, and practically unworkable. See, e.g., *Attorney Gen.* v. *Johnson*, 282 Md. 274, 290 (1978); 1 K.C. Davis, Administrative Law § 3:10, at 184-185 (2d ed. 1978); Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications, 55 Tex. L. Rev. 759, 794-795 (1977).

Because I believe that the factual-legal distinction relied on by the court is unworkable, unnecessary, and unconstructive, I concur only in the court's conclusion that the panel decision is collective and constitutionally permissible. I agree with the court that the judge correctly determined that the offer of proof was sufficient as a matter of law to permit the plaintiff to go to trial without posting a bond.