176 N.J. Super. 407 (1980)
423 A.2d 670
SARAH SUCHIT, ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF GEORGE SUCHIT, DECEASED, AND SARAH SUCHIT, INDIVIDUALLY, PLAINTIFF,
v.
SYDNEY J. BAXT, M.D., AND SALVATORE SAPIENZA, M.D., DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
August 29, 1980.
*412 Barry A. Knopf for plaintiff (Cohn & Lifland, attorneys).
John P. McGee for defendants (McDermott & McGee, attorneys).
MARTIN, J.S.C.
Plaintiff alleges that defendants negligently failed to adhere to the requisite standard of medical care required in their treatment of George Suchit. George Suchit is deceased. The action is classically denominated professional malpractice, and is therefore subject to the provisions of R. 4:21. In this matter the rule was followed, a pretrial was conducted and a medical panel hearing held. The panel's determination was unanimous in favor of defendants.
Plaintiff moves to prevent the admission of the panel determination during the course of the scheduled trial, arguing that it is constitutionally defective in several interrelated ways.
Specifically, plaintiff alleges that the rule violates the United States and New Jersey Constitutions by: (1) infringing on her due process right by preventing cross-examination, effectively preventing trial by jury, and imposing a procedure as a precondition to access to the court; (2) violating plaintiff's constitutional *413 right of equal protection under the law by singling out medical malpractice actions, limiting the admissibility of findings to unanimous panel decisions, and imposing an economic hardship creating a means violation of this right; (3) violating the separation of powers of our government as defined in the New Jersey Const. since our Supreme Court is without power to promulgate a rule which is substantive in nature (R. 4:21-5(e)).

Due Process

(Cross-examination)
Plaintiff claims that the admissibility of panel findings (R. 4:21-5(e)) at trial denies her the right to cross-examine witnesses. In the realm of "general propositions of law" the court does not take issue with plaintiff's argument concerning her right of cross-examination. The right of confrontation and cross-examination of witnesses is constitutionally guaranteed. State v. Vaccaro, 142 N.J. Super. 167 (App.Div. 1976), certif. den. 71 N.J. 518 (1976). To prevent cross-examination on a broad spectrum creates constitutional difficulties. Brogan v. Passaic Daily News, 22 N.J. 139 (1956). The general propositions, however, must be compared with the factual setting of this case. Plaintiff's argument that this lack of cross-examination prevents her from ascertaining the bias of panel members is without merit. R. 4:21-5(b) provides a means to expose bias of panel members before the scheduled panel hearing. All panel members are deemed unbiased, having once passed the screening provisions of the rule. In the present case plaintiff did not object to the panel members or request a hearing on this issue.
The fact that R. 4:21 may provide for the admissibility of a panel finding does not violate the right to cross-examination even though the finding can technically be called hearsay. With proper safeguards the lack of cross-examination hearsay argument does not create a constitutional impediment. The often repeated twin tests of reliability and confrontation are not always constitutionally mandated. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Compare Evid. R. *414 63 and the exceptions contained therein, which are in many ways more significant than those presented in R. 4:21. In addition, the rule provides for the medical panel member to be called as a witness and be cross-examined (R. 4:21-5(d)), which in itself safeguards the constitutional right. There are distinctions and similarities in other cases. See State v. Rojnai, 132 N.J. Super. 530 (App.Div. 1975) (refreshing recollection from previously recorded testimony).
Plaintiff's reliance on Davis v. Davis, 103 N.J. Super. 284 (App.Div. 1968), is not conclusive on this issue. While one cannot cross-examine a document, in this matter the parties control what is presented to the panel and are given an opportunity to explain, refute and rebut the evidential material of their adversary. R. 4:21-5(b). Greater due process protection is afforded in this rule than in other rules and case law dealing with nontestimonial evidence. See Evid. R. 63.
It is important when considering plaintiff's arguments to consider the import of the rule requiring that the jury be instructed by the judge, or if the judge is the trier of the facts, to consider the limitation placed upon panel findings. R. 4:21-5(e). Additionally, other general trial information is available to the factfinder which will make them aware of the scope of the panel hearing, as compared with the scope of the trial.[1]
The inability of a party to specifically cross-examine the findings of the panel as to deviation or nondeviation from the acceptable standard of care, when analyzed in the rule setting, does not make R. 4:21 constitutionally defective.
Plaintiff, in this area of lack of cross-examination, alleges that the panel finding is "a net opinion" and therefore inadmissible, citing Parker v. Goldstein, 78 N.J. Super. 472 (App. Div. 1963), certif. den. 40 N.J. 225 (1963). This argument must be evaluated, however, from its root source, Evid. R. 56. The *415 "net opinion" argument is only valid when it can be shown that there is an absence of factual or hypothetical testimony supporting the "net opinion." Under R. 4:21 the panel determination must be based upon findings of fact which are memorialized in writing and filed with the trial judge. R. 4:21-5(e). Furthermore, a litigant in a medical malpractice trial must adduce sufficient facts on which a jury can base its finding(s). It would be absurd to assume that a litigant would fail to produce the same proofs which provided the basis for a unanimous panel finding at a panel hearing at the ultimate trial of the case. Thus the dangers implicit in the "net opinion" could not arise in the context of a medical malpractice trial which follows a proper panel hearing with a unanimous finding. Plaintiff's "net opinion" argument is distinguishable from the procedure required in the rule under consideration.

(Trial by Jury)
Plaintiff argues that the admissibility of the panel's finding impairs her right to a jury trial. She does not claim that the right to jury trial is denied but rather that this right is impermissibly eroded by the rule. She points out that the effect of R. 4:21 is to dissuade the plaintiff who receives an unfavorable decision from proceeding to trial, thus resulting in abandonment of a cause of action.
The gravamen of the right to jury trial is that a party asserting a claim is entitled to have a jury be the final arbiter of the facts in dispute. In re Stern, 11 N.J. 584 (1953). Plaintiff asserts that a lay jury, hearing the unanimous decision of a panel (three court-appointed experts), will conclude that it lacks the knowledge and expertise sufficient to enable it to overrule such panel. The resulting jury determination, rather than being the product of an unfettered and unbiased judgment, constitutes an adoption of the panel experts' judgment.
The court is unable to agree with plaintiff's position. Despite a R. 4:21 panel hearing, the jury is still the ultimate *416 trier of the fact. Once the panel has considered the evidence and a decision has been rendered, plaintiff is free to proceed to trial and present her case to a jury. There is no question that an adverse decision by the panel casts an increased burden upon the claimant. Such burden, however, is not so oppressive as to impair the party's right to a jury trial. See Carter v. Sparkman, 335 So.2d 802 (Fla.Sup. 1976). The clear language of R. 4:21-5(e) seems to forsee this problem: "the recommendation shall not be binding upon the jury or upon a judge sitting as a trier of the facts-but shall be accorded such weight as the jury or the judge sitting as the trier of the facts chooses to ascribe to it in view of all the relevant evidence adduced at trial."
The Supreme Court anticipated this problem and treated it by requiring the court to instruct the factfinder as indicated. Analogies to the admissibility of the panel's determination may be drawn to those instances where administrative findings, and judicial and statutory presumptions, are admissible at trial. In Meeker v. Lehigh Valley R.R. Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915), the Supreme Court held that an interstate commerce commission finding could be submitted to the jury as prima facie, though rebuttable, evidence of the facts as determined by the commission. The court upheld the application of the statute:
This position merely establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full determination of all the issues, and takes no question of fact from either the court or jury. At most therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents. [At 430, 35 S.Ct. at 335.]
It is to be noted that R. 4:21 cuts off no defense, interposes no obstacle to a full consideration of all the issues, and takes no question of fact from the jury. The parties are in no way precluded in the trial of the case from presenting whatever evidence and making whatever arguments, on the merits of the claim, that they might have made had there been no pretrial decision. Although the panel decision is evidential, and this evidence would not exist but for R. 4:21, plaintiff is free to attack and impeach the panel determination by competent *417 evidence. He may show, for example, that the panel did not hear all of the relevant evidence, Comiskey v. Arlen, 390 N.Y.S.2d 122, 55 App.Div.2d 304 (App.Div. 1976), aff'd 43 N.Y.2d 696, 401 N.Y.S.2d 200, 372 N.E.2d 34 (Ct.App. 1977), or that the panel proceeding was less detailed than the jury trial. State ex rel. Strykowski v. Wilkie, 81 Wis.2d 491, 261 N.W.2d 434 (Sup.Ct. 1978).
Plaintiff complains of the great burden imposed upon her by an adverse determination, the severity of which effectively dissuades her from proceeding to trial. One of the basic purposes of R. 4:21 is to identify meritorious claims, and to alert counsel and claimant to the weaknesses of their position, where in fact their claims are lacking in merit. R. 4:21-1. Rather than acting as a burden to the bringing of suit, panel determination benefits the parties by allowing them the unique opportunity to obtain an objective opinion of what others think of the merits of their claim. Prendergast v. Nelson, 199 Neb. 98, 256 N.W.2d 657 (Sup.Ct. 1977).
Plaintiff relies upon the decision of the Illinois Supreme Court in Wright v. Hospital Ass'n, 63 Ill.2d 313, 347 N.E.2d 736 (1976). It is to be noted, however, that the procedure under the Illinois statute is different from that called for under the New York and New Jersey schemes. This case was specifically distinguished by the court in the Arlen court supra, 390 N.Y.S.2d at 127. The Illinois statute allowed for the panel's recommendation to be the sole basis for the entry of judgment. That the Illinois statute has a peculiar infirmity was acknowledged by that court when it noted, "In so holding, however, we do not imply that a valid pretrial procedure cannot be devised." 347 N.E.2d at 741.
Admissibility is central to the functioning of this rule. As was indicated by one commentator:
Admissibility is intended to discourage either party from failing to present a complete case at arbitration in hopes of vindication at trial. By encouraging thorough presentation of the case at arbitration the provision promotes final resolution of the claim in one stage (arbitration) rather than two (arbitration *418 and trial). Resolution in a single stage would permit the parties to realize the cost savings attributable in arbitration. Such savings and the presumably fair results in most cases will cause most parties to conclude that a jury trial is not desirable. Only in the relatively rare case, where there remains hope for a different verdict at trial, will the admissibility of the award effect the jury's role, and in those cases the lawyer may be able to neutralize the effect of the award. Admissibility of the award thus plays an important part in making the entire plan work and only a relatively insignificant or possibly nonexistent intrusion on the domain of the jury. [Note: "Medical Malpractice Arbitration: A Comparative Analysis" 62 Va.L.Rev. 1285, 1303-1304, n. 110 (1976)].
Commentators generally agree that the admissibility of a panel award does not deny the right of jury trial. See Redish: "Legislative Response to the Medical Malpractice Insurance Crisis; Constitutional Implications," 55 Tex.L.Rev. 759, 793 (1977).
Historically jurors, for the most part, have proven their independence. Comiskey v. Arlen, supra. They guard their roles with unique jealousy and refuse to allow themselves to be unduly influenced. Id. For the jury the panel decision is, in essence, in the nature of expert opinion which they may hear and accept or reject, as they would any other expert evidence. Eastin v. Broomfield, 116 Ariz. 576, 570 P.2d 744 (Sup.Ct. 1977). The mere fact that the jury is exposed to a preliminary investigation or determination is not sufficient influence to rob it of its function as arbiter of the facts. In the Matter of Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920).

(Access to the Courts)
The panel hearing as a prerequisite to trial violates, plaintiff alleges, her due process rights. At the outset, it should be noted, not all medical malpractice claims require submission to a panel hearing. The court may at the pretrial conference dispense with panel submission if it is satisfied that there is no dispute either as to the applicable standard or the fact of violation thereof. In such a case the sole factual issue is one of witness credibility, and the panel's submission would be of no significant value in the efficient disposition of the action. R. 4:21-2(d).
*419 Given the fact that panel submission is required, as it was in this case, the court must still reject plaintiff's claim of denial of access to the courts. As previously stated, in regard to the right to jury trial issue, plaintiff is in no way precluded from access to a final determination. She is, however, delayed in acquiring access to the courts. Such delay has clearly been held to be slight in comparison with the benefits of the procedure and, therefore, is not sufficient to justify the claim of denial of access. Prendergast v. Nelson, supra.
The Constitution does not proscribe at what stage of an action a trial by jury must, if demanded, be had. All that is required is that the conditions, restrictions or regulation not be so onerous that they make the right to jury trial practically unavailable. Attorney General v. Johnson, 282 Md. 168, 385 A.2d 57 (Ct.App. 1978).
Access claims against similar schemes have been rejected by other courts. In State ex rel. Strykowski v. Wilkie, supra, the Wisconsin Supreme Court stated: "States are under no constitutional obligation to neutralize the economic disparities which inevitably make resort to the courts different for some plaintiffs than others." 261 N.W.2d at 444.
An access claim was brought in the case of Rybeck v. Rybeck, 141 N.J. Super. 481 (App.Div. 1976), against the No-Fault Act, which prohibits maintaining actions for collectable medical payments, N.J.S.A. 2A:39-12. In that matter the court held:
In arguing that she had been deprived of both access to the courts and the right to jury trial, plaintiff adopts these slogan phrases as though they had some weight apart from her interest in the existence of the traditional common law tort action. [At 507.]
While the requirement that certain medical malpractice claims be submitted to a court-appointed panel before trial could conceivably operate as a hardship on some parties, under the scheme as outlined by our Supreme Court, there is no constitutional impediment to the procedure. See San Antonio School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), reh. den. 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 *420 (1973). Moreover, the procedure is rationally related to a legitimate objective and easily passes the rational basis test as outlined in Rodriguez, supra.

Equal Protection
Plaintiff has offered an equal protection argument involving two alleged invidious classifications. The first classification is between those who have a cause of action for medical malpractice and must participate in the panel hearing, and those who have any other claims arising in negligence law. The second classification involves the different treatment concerning admissibility which occurs when the unanimous panel determination is found as opposed to a nonunanimous decision. In addition, plaintiff argues that an impermissible means penalty is imposed by the hearing which also violates her equal protection under the law.
Under both the State and Federal Constitutions all persons are guaranteed the right to be treated equally under the law. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55 (1978). Where a special treatment is afforded some litigants, but not all, the court must scrutinize the purpose of the classification to determine whether the degree of unequal protection is such that it is constitutionally impermissible to allow it to stand. King v. South Jersey Nat'l Bank, 66 N.J. 161 (1974). In Danridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the court explains the test to be used:
In the areas of economics and social welfare, a state does not violate the equal protection clause merely because of the classification made by its laws are imperfect. If the classification has some "reasonable basis" it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. [At 485, 90 S.Ct. at 1161.]
New Jersey has consistently analyzed equal protection problems presented in this light.
In Busik v. Levine, 63 N.J. 351 (1973), the Supreme Court mandated a rule of procedure which provided for prejudgment *421 interest for tort claimants, which rule withstood equal protection attacks brought on the basis that prejudgment interest was not provided for other successful claimants.
In Rybeck v. Rybeck, supra, equal protection attacks were brought against the No-Fault Act, alleging that auto tort claimants were treated differently than other tort claimants. The court applied the rational basis test and held that since the adjustments to the right to sue for auto accident injuries were not done arbitrarily there was no denial of equal protection.
This traditional, rational basis test has been utilized in other jurisdictions involving medical malpractice schemes similar to New Jersey's. See Eastin v. Broomfield; Prendergast v. Nelson; State ex rel. v. Strykowski v. Wilkie and Attorney General v. Johnson, all supra.
Plaintiff has cited several cases[2] in support of the proposition that the classifications under attack are arbitrary, with no satisfactory reason for such unequal treatment. The cases cited in support, however, are wholly contrary to the express purpose of the rule as stated in R. 4:21-1 which reads:
The procedure set forth in R. 4:21 is for the common interest of the public, the medical and legal professions in the processing of medical malpractice actions with the view towards discouraging baseless actions and encouraging settlement of those actions based on reasonable medical probability; to monitor efficiently these cases through the court; and, to assist in the early disposition of medical malpractice actions.
Clearly the purpose of the rule is to expedite disposition of medical malpractice cases and to encourage settlement of those which are meritorious. "Report of the Supreme Court's Committee on Relations with the Medical Profession," 101 N.J.L.J. 45 (1978). It was the Committee's conclusion that these purposes would be met by the proposed procedure set forth in R. 4:21.
*422 The need for health care requires that extra steps be taken to protect both patients and physicians to insure the continuity of high standards of medical care. Butler v. Flint-Goodridge Hosp. of Dillard, 354 So.2d 1070 (La. App. 1978) writ den. 362 So.2d 574 (La.Sup.Ct. 1978). In light of this great need our Supreme Court has the responsibility to maintain an efficient level of processing of medical malpractice claims. Indeed, this is the responsibility of the court in regard to all litigation, not simply medical malpractice cases. In the fulfillment of this responsibility the court may well take into account the unusual burden on the court's time and expense uniquely associated with medical malpractice actions. State ex rel. Strykowski v. Wilkie, supra at 444. By singling out for special treatment those cases which by their nature restricted the court calendar, the court not only brings about the efficient disposition of medical malpractice cases but also expedites the adjudication of all other matters.
The unanimous-nonunanimous panel finding argument as it relates to an alleged invalid classification is without merit. That an added due process type consideration was built into the rule does not establish a basis upon which to claim a classification defect. This is not a criminal matter. See Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1626, 32 L.Ed.2d 184 (1972). Each party participating attempts to persuade the panel toward a favorable unanimous finding. The plaintiff must, however, ultimately establish the deviation alleged in the panel hearing and at the jury trial.
The rule does not provide for invidious discrimination by way of classification. A rational basis exists for the direction taken within the rule concerning processing of certain medical malpractice cases. There is no constitutional impediment on an equal protection basis within the rule for this complaint. See Hines v. Elkhart Gen'l Hosp., 465 F. Supp. 421 (D.C. 1979), aff'd 603 F.2d 646 (7 Cir.1979).
*423 Plaintiff additionally points out that the added expense of a panel hearing effectively denies access to the court to a party of limited financial resources, and as such violates her rights under the Equal Protection Clauses of the Federal and State Constitutions. It is to be noted there is no indication in this case that this is a fact. To the contrary, plaintiff intends to pursue this matter through trial.
The court recognizes that in the case of certain medical malpractice matters plaintiffs and defendants have additional financial burdens placed upon them by R. 4:21. There is, however, no constitutional obligation to completely neutralize the economic disparities which inevitably make resort to the courts different for some plaintiffs than others. State ex rel. Strykowski v. Wilkie, supra at 444. The courts cannot in all instances adjust imbalances in the resources of the litigants. The options provided the parties under the rule concerning panel material and manner of presentation minimize any argument concerning economic detriment. R. 4:21-5(b). The court cannot conclude that the additional expense mandated by this malpractice rule is so unreasonable in relation to its legitimate goal that it violates the constitutional guarantee of equal protection as alleged by the plaintiff.

Separation of Powers
At least 18 other states have adopted a method of pretrial panel hearing as a mechanism in processing medical malpractice suits. "Report of the Supreme Court Committee on Relations with the Medical Profession," 101 N.J.L.J. 451 (1978). Although plaintiff has cited cases in other states where such statutes were found unconstitutional, Simon v. St. Elizabeth's Med. Center and Wright v. Hospital Ass'n, both supra, an overwhelming number of courts, all cited supra, have found such procedures to be constitutional. Comiskey v. Arlen (distinguishing Wright v. Hospital Ass'n, supra); Carter v. Sparkman; Prendergast v. Nelson; State ex rel. Strykowski v. Wilkie; Butler v. Flint-Goodrich; *424 Attorney General v. Johnson; Eastin v. Broomfield (distinguishing Simon v. St. Elizabeth's Med. Center). While plaintiff can distinguish these cases upon the basis that they are statutory oriented, whereas our procedure is court-rule implemented, this division does give credence to the reasoning of constitutionality as expressed in this opinion.
It remains, therefore, for the court to carry over the constitutional rationale in considering the separation of powers issue. Our Supreme Court has by rule established the panel proceeding scheme in malpractice cases. Because of this, plaintiff contends that the rule is unconstitutional in that the Supreme Court is without the constitutional authority to so act and that having done so it has usurped the power of the Legislature, in violation of the separation of powers doctrine as expressed in the New Jersey Constitution.
Our State Constitution expressly provides that the Supreme Court "shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure of all such courts." N.J.Const. (1947), Art. IV, § II, par. 3. The leading case interpreting this provision, Winberry v. Salsbury, 5 N.J. 240 (1950), has been correctly cited by both parties as holding that the Supreme Court has exclusive powers to enact rules of practice and procedure, such power being subject to and exclusive of substantive law which is within the domain of the Legislature. The substantive-procedural dichotomy has been analyzed in subsequent cases with sometimes mixed and confusing results. Courts are often confronted with rules and acts having both substantive and procedural characteristics. In the present case this court is again faced with such a rule. It is axiomatic that the Supreme Court, as part of its constitutional obligations, must provide rules which are efficient, equitable and procedurally practicable. State v. Otis Elevator Co., 12 N.J. Super. 1 (1953). The creation of the rules of procedure is the sole responsibility of our Supreme Court. State v. Lowery, 95 N.J. Super. 307 (Law Div. 1967). *425 Rules adopted by the Supreme Court are presumed constitutional, and it is the burden of the party contesting the rule to show that the Supreme Court's rule is in fact arbitrary and unreasonable. American Trial Lawyers Ass'n, etc. v. New Jersey Supreme Court, 66 N.J. 258 (1974).
It is important to remember, when making an analysis of substantive-procedural distinctions, that other courts faced with similar problems have utilized a test of whether the rule falls within the judicial or legislative domain, focusing upon an analysis of whether or not the exercise is purely judicial and not legislative. These other jurisdictions framed their inquiry in terms of whether the judicial power has been vested in an entity which is not a court. In the present case the inquiry is whether the judicial power has been vested in a medical malpractice panel.[3]
The mere fact that the medical malpractice panel makes factual determinations and applies legal principles to these facts does not alone support a conclusion that it is exercising judicial rather than legislative powers. If that were so, no administrative agency performing in a judicatory function would survive constitutional muster. Attorney General v. Johnson, supra.
The essence of judicial power, in the constitutional sense, is the final authority to render and enforce a judgment. Eastin v. Broomfield, supra. An entity does not exercise sovereign power of the state constitutionally assigned to the judiciary if its decision is in no sense final, binding or unenforceable. Attorney General v. Johnson, supra at 65. In Wright v. Central Dupage Hosp. Ass'n, supra, the court held a state statute unconstitutional on the grounds that the legislature exercised judicial powers by vesting them in a medical malpractice panel. *426 The powers and functions of the panel were considered those of a court because judgment could be entered on a panel decision, such judgment being enforceable in court.
Unlike Wright, the determination of a New Jersey medical malpractice panel has no binding effect; judgment cannot be entered predicated upon a panel decision. This may suggest that the panel is in effect exercising a legislative function rather than judicial. Since the authority of the panel is derived from the judicial branch of government, the exercise of powers by the panel other than judicial in nature is an exercise of powers beyond those constitutionally granted to the judiciary. Projecting this type of approach, the court might conclude that the Supreme Court's adoption of R. 4:21 was an act in violation of the constitutional doctrine of separation of powers. As previously indicated, however, in view of the specific constitutional mandate applicable to the New Jersey Supreme Court this jurisdiction does not utilize the judicial-legislative power approach. New Jersey has consistently evaluated constitutional attacks on the Supreme Court's rule making power based upon the "substantive-procedural" tests expressed in Winberry v. Salsbury, supra.
R. 4:21 is procedural, considering it controls the process by which a judgment in medical malpractice cases is obtained. On the other hand, it is substantive in that it deals with evidence admissibility and may have a clear effect upon the final judgment. The court has been faced with such a mixed bag in the past. In Busic v. Levine, supra, the court applied the substantive-procedural analysis to a court rule providing for pre-judgment interest, R. 4:42-11(b). While the court noted both procedural and substantive characteristics, indicating (at 364) that "it is simplistic to assume that all law is divided neatly between substance and procedure," the decision turned on the "signal" fact that although having a substantive impact, the rules serve to expedite the disposition of cases. 63 N.J. at 371. See, also, Fehrenbach v. Fehrenbach, 42 Wis.2d 410, 413, 167 *427 N.W.2d 218-220 (Sup.Ct. 1969); "Most procedural rules may have some collateral substantive effect but do not become substantive in nature because of some indirect effect."
In the present case the expedition of medical malpractice cases is the expressed purpose of the rule. R. 4:21-1. Additionally, the procedure adopted in the rule  one judge assigned to preside at all pretrial proceedings, mandatory pretrial within 12 months, panel hearings  is all aimed at expediting the disposition of cases. It seems clear that, viewed as a whole, the rule is intended to and serves as a procedural device to promote the efficient administration of justice. See American Trial Lawyers Ass'n v. New Jersey Supreme Court, supra; Rybeck v. Rybeck, supra; Blair v. Erie Lackawanna R.R. Co., 124 N.J. Super. 162 (Law Div. 1973).
One distinguishing test is that of "sole outcome." If the rule can determine in and of itself the outcome of the proceeding, it is generally substantive. If it is but one step in the ladder to final determination and can effectively aid a court function, it is procedural in nature and within the Supreme Court's power of rule promulgation. The purpose of the rule has already been stated. It is a court procedure-practice problem which is at the core of necessity for R. 4:21.
The history of rule making in regard to court procedure in New Jersey reflects a concern for the importance of function over form. The Supreme Court should not be prohibited from resolving procedural problems merely because of slight effect upon some substantive right. Plaintiff's argument loses its impact when it is considered in this light. The Supreme Court did not engage in substantive legislation by the enactment of R. 4:21.
The motion of plaintiff to preclude the panel decision at the time of trial is denied.
NOTES
[1] R. 4:21-5(c) permits the litigants to control the submission of the issue of damages before the panel.
[2] Simon v. St. Elizabeth Med. Center, 3 Ohio Ops.3d 164, 355 N.E.2d 903 (C.P. 1976); Wright v. Hospital Ass'n, supra; Graley v. Stayatham, 343 N.E.2d 832 (Ohio C.P. 1976).
[3] The analysis of foreign jurisdiction cases on this point might be considered academic because of the legislative versus court panel establishment distinction; however, it does serve to emphasize the required constitutional approach in New Jersey to judicial authority.