839 A.2d 896

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. TER-
RANCE SIMPSON, DEFENDANT, AND AEGIS SECURITY
INSURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
TALIF RICHSON, DEFENDANT, AND AEGIS SECURITY
INSURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. NATHA-
EL ADENEW, DEFENDANT, AND AEGIS SECURITY INSUR-
ANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. MEL-
VIN PORTER, DEFENDANT, AND AEGIS SECURITY IN-
SURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. SAL-
IH PLEASANT, DEFENDANT, AND AEGIS SECURITY IN-
SURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
CHARLES PAMPLIN, DEFENDANT, AND SIRIUS AMERICA
INSURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. KHALIF
MAJETTE, DEFENDANT, AND SIRIUS AMERICA INSURANCE
COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. HAS-
SAN BOODERS, DEFENDANT, AND SIRIUS AMERICA IN-
SURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. AMEEN
COOK, DEFENDANT, AND SIRIUS AMERICA INSURANCE
COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. LARA
BURNETT, DEFENDANT, AND SIRIUS AMERICA INSUR-
ANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
AMIR MENDEZ, DEFENDANT, AND SIRIUS AMERICA
INSURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. SYYID CHESTER, DEFENDANT, AND SIRIUS

AMERICA INSURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. BER-
NARD BELL, DEFENDANT, AND SIRIUS AMERICA IN-
SURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. TOR-
REY EDWARDS, DEFENDANT, AND SIRIUS AMERICA IN-
SURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. MAR-
QUIS RHYMES, DEFENDANT, AND SIRIUS AMERICA IN-
SURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. KEO-
NORE STREPFORD, DEFENDANT, AND SIRIUS AMERICA
INSURANCE COMPANY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ANDREW HART, DEFENDANT, AND SIRIUS AMERICA
INSURANCE COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 16, 2003—Decided December 22, 2003.

Before Judges PRESSLER, CIANCIA and ALLEY.

*Samuel M. Silver* argued the cause for appellants (*Mr. Silver and Ted Del Guercio, III,* on the briefs).

*Melissa E. Hager,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*Peter C. Harvey,* Attorney General, attorney; *Patrick DeAlmeida,* Deputy Attorney General; *Ms. Hager,* on the briefs).

*Francis J. Giantomasi,* Essex County Counsel, attorney for respondent Essex County, relied on the briefs filed on behalf of respondent State of New Jersey.

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

These are appeals from seventeen bail forfeiture judgments entered in Essex County. We affirm each of the judgments appealed from.

In each of these seventeen cases, which we have consolidated for purposes of this opinion, the appellant is a corporate surety authorized to underwrite bail bonds in the State of New Jersey and, through an authorized agent, posted a bond to secure the appearance of a defendant indicted in Essex County. More specifically, in each case the appellant is either Sirius America Insurance Company or Aegis Security Insurance Company. Each of the seventeen defendants failed to appear as required. In each case, the court entered a judgment of forfeiture of the bail in accordance with *R.* 3:26–6, as amended effective September 1, 1998, relaxed and modified by orders entered by the Supreme Court on November 1, 2000, and June 11, 2002, and implemented by Administrative Directive # 3–02, superseding Administrative Directive # 7–00, which superseded Administrative Directive # 5–00. In each case the corporate surety, despite proper notice, failed to object to the declaration of forfeiture or to the entry of the judgment of forfeiture. Nor, presumably because the defendant remained a fugitive, did it seek either to have the forfeiture set aside or remitted pursuant to *R.* 3:26–6(b) and (c) or to be exonerated pursuant to *R.* 3:26–7. Rather, in each case, the corporate surety, supported by seventeen verbatim briefs, challenges the constitutionality of *R.* 3:26–6 and its companion rules, *R.* 1:13–3(d) and (e), which provide, respectively, for the establishment of a bail registry for those authorized to write bail bonds and for removal from the registry and hence preclusion from further bonding of those sureties and agents failing to satisfy an uncontested judgment of forfeiture.

We conclude that there is no constitutional infirmity in the court rules here challenged and, indeed, that the constitutional challenge is frivolous. We consequently affirm the seventeen judgments appealed from.

The background of the 1998 adoption of *R.* 1:13–3(d) and (e) and amendment of *R.* 3:26–6 was explained in detail by the federal district court in *Capital Bonding Corp. v. New Jersey Supreme Court,* 127 *F.Supp.*2d 582, 584–589 (D.N.J.2001), in which the plaintiff, the program administrator for the corporate sureties who are appellants in these cases,[1] challenged the constitutionality of the rules on essentially the same grounds as are raised here. By way of brief summary, the motivating force for the 1998 rules was the New Jersey judiciary's realization that hundreds and hundreds of defendants for whom bail had been posted by corporate sureties were failing to appear and that this egregious and untenable situation was attributable in substantial measure to the bondsmen's failure to supervise the defendant after his release or to take any effective steps to recapture him after he became a fugitive. It further appeared that not every county was diligent in moving for judgments of bail forfeiture against the bondsmen and their corporate sureties. Moreover, even where forfeiture was sought against the bondsmen and their corporate sureties, the entry of forfeiture judgments proved to have virtually no effect on their continuing to write bonds that were also then defaulted on. In sum, this escalating situation of non-appearing defendants whose bonds were underwritten by the same group of sureties constituted a grave, obvious, and continuing threat to the proper administration of criminal justice and threatened as well the preservation of defendants' constitutional right to bail. Because enforcement of judgments of forfeiture by way of execution was apparently an elusive and ineffective remedy, a more efficacious technique had to be developed to ensure that the corporate sureties and their agents complied with their obligations of supervision to the end that bailed defendants would appear, of recapture of fugitives as promptly as possible if they did not appear, and of payment in accordance with the undertakings of the bond

---

[1] We take judicial notice of the Program Administrator Agreements between Capital Bonding and these sureties filed with the Department of Insurance and constituting a public record thereof.

in the event of non-appearance and non-recapture. The 1998 amendments of *R.* 1:13–3 and 3:26–6 and their subsequent modifications constitute the Supreme Court's effort to achieve those ends while at the same time protecting the underlying right to bail.

Although the federal district court abstained from deciding the issues raised in *Capital Bonding,* it nevertheless clearly delineated the asserted constitutional issues before it, the same issues now raised. In sum, there are two major challenges, first, the claim that the rules deprive the corporate sureties and their agents of procedural due process by providing inadequate notice; and second, that the New Jersey Supreme Court lacked the authority to promulgate the preclusion rule of *R.* 1:13–3(e). The district court summarized these arguments as follows:

> Although the plaintiff has cloaked its claims in this case in federal constitutional language, it is manifest that the real dispute in this case is whether the New Jersey Supreme Court overstepped its authority when it took steps to decrease the fugitive rate in the criminal justice system by penalizing bail bond insurers when defendants fail to appear for court. The plaintiff argues its federal Due Process claims only meekly, and cites no authority supporting the notion that the federal Due Process requires the defendants to give more notice than the 45 [2] days already provided under Rule 1:13–3. If would be difficult to articulate a principled argument that the Constitution's Due Process clause is offended by a scheme that provides multiple notices and occasions to be heard (or to cure the default upon the bail bond by paying the judgment or producing the defendant) before imposing the final removal of the insurance producer and its limited insurance representatives from the bail registry.

> [*Capital Bonding Corp. v. New Jersey Supreme Court, supra,* 127 F.Supp.2d at 595.]

This court has already addressed the due process arguments based on asserted lack of adequate notice to the corporate sureties and their agents of the entry of the forfeiture judgment, of the opportunity for relief therefrom, and of the preclusion consequences of continued nonpayment. We rejected those arguments essentially for the cogent reasons suggested by *Capital Bonding,* as above quoted, in *State (County of Bergen) v. Polanca,* 332

---

[2] The 45–day period was extended to 75 days by the June 2002 relaxation order.

N.J.Super. 436, 753 A.2d 1170 (App.Div.2000), *certif. denied,* 165 N.J. 604, 762 A.2d 219 (2000), *cert. denied sub nom. International Fidelity Ins. Co. v. New Jersey,* 532 *U.S.* 1052, 121 *S.Ct.* 2194, 149 *L. Ed.*2d 1025 (2001). We continue to reject those arguments, reaffirming our decision in *Polanca.*

█ The issue that has not yet been definitively adjudicated is the challenge to the Supreme Court's authority to have promulgated *R.* 1:13–3(e), which precludes those corporate sureties who fail to pay a final judgment of forfeiture and who have not sought relief from the forfeiture from underwriting any further bonds until the judgment has been satisfied. The argument is basically predicated on the assertion that removal from the registry is a substantive rather than a procedural requirement, and that, in any event, the matter of removal is the exclusive prerogative of the Legislature and the Commissioner of Insurance under the insurance laws of this State.

We are convinced that appellants' challenge to the Supreme Court's authority is frivolous, entirely misperceiving the scope of the Court's constitutional authority over practice and procedure and consequently over the administration of justice by the court system. *See N.J. Const.,* Art. VI, § 2, ¶ 3, providing that "[t]he Supreme Court shall make rules governing the administration of all courts in the State and, subject to law, the practice and procedure in all such courts." *See Winberry v. Salisbury,* 5 *N.J.* 240, 255, 74 A.2d 406 (1950), *cert. denied,* 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L. Ed.* 638 (1950). As the Supreme Court further explained in *Knight v. Margate,* 86 *N.J.* 374, 387, 431 A.2d 833 (1981), "[t]he power of the Supreme Court in the judicial domain flows from and is vested by organic law. It is necessarily paramount and exclusive as to matters that are central to the judiciary. The Court's authority with respect to the administration of the courts is far-reaching; it encompasses the entire judicial structure and necessarily covers all aspects and incidents related to the justice system."

It is difficult to conceive of a matter more central to the administration of the criminal justice system than the appearance of defendants before the court as the court requires. At the same time, the Court has the obligation to protect the constitutional right to bail. But that constitutional right is clearly qualified by, among other limitations, compliance with the conditions of bail not only by the principal but also by the surety. The simple question then is whether the Court has the authority to require rejection of a bond—since that is what preclusion is tantamount to—underwritten by a surety who has already defaulted on a bail bond obligation by failing to pay when the bail has been properly forfeited and who, moreover, continues to refuse to cure the default by making payment. An answer in the affirmative is, in our view, beyond any reasonable debate.

We point out that *R.* 1:13–3(b), which has never been challenged in that regard, provides that by posting a surety bond, including a bail bond, in any court, the principal and surety thereby submit themselves to the court's jurisdiction. By so doing, we think it plain that the surety is subject to the court's control and to its reasonable exercise of its inherent as well as its authorized sanction powers. We think it clear that the court has the authority to use reasonable coercive measures to enforce its orders and judgments. The Supreme Court's refusal to permit a defaulting surety to continue to underwrite bail bonds while it is in default of an obligation to the court imposed upon it by a bond it previously issued is akin to the judiciary's inherent and rule-authorized power to enforce litigants rights. *See generally R.* 1:10–3. That power goes so far as to permit the court to incarcerate a recalcitrant litigant, who is said to carry the key to the jailhouse in his pocket since all he must do to secure release is to comply with the contemned order. *See, e.g., Anyanwu v. Anyanwu,* 339 *N.J.Super.* 278, 771 *A.*2d 672 (App.Div.), *certif. denied,* 170 *N.J.* 388, 788 *A.*2d 773 (2001) (incarceration may continue as long as it remains reasonably coercive rather than punitive). Similarly, a surety removed from the bail registry need only make payment in order to resume the right to write bail bonds. It is thus patently

frivolous to suggest that the court does not have the power to reject the bond of a surety already in default, particularly since the surety can ensure the acceptability of its bonds by curing its default by payment. In sum, the court does not have to continue dealing with defaulters.

■ With respect to appellants' separation of powers argument, we have recently reaffirmed the principle that the constitutionally mandated separation of powers was not intended to create an absolute division of powers among the branches of government but operates rather to maintain the integrity of each branch. *See, e.g., State v. Bond,* 365 *N.J.Super.* 430, 839 A.2d 888 (App.Div.2003); *Bullet Hole, Inc. v. Dunbar,* 335 *N.J.Super.* 562, 573–574, 763 A.2d 295 (App.Div.2000). We of course acknowledge both legislative and executive authority to control and regulate the bail bond business. But we regard it as beyond cavil that whatever privileges a surety company has been granted by the Commissioner of Insurance acting under legislative authority do not afford it the right to flout the authority of the court by ignoring its direct and express undertakings to the court as set forth in its bond. Patently then, the Court has both the inherent and the constitutional competence to direct rejection of the bonds of sureties in default. Any requirement, based on any of the theories proffered by appellants, that the criminal courts of this State must continue to accept the bonds of defaulting sureties until the Legislature has otherwise provided would constitute an untenable burden on the Court's power to administer the criminal justice system. There is no cognizable theory based on separation of powers or any other doctrine that could reasonably restrain the Court from taking such a step to protect the administration of the criminal courts. *Cf. Knight v. Margate, supra,* 86 *N.J.* at 390–391, 431 A.2d 833. As we have already said, the bail registry and the prescription of removal therefrom as prescribed by *R.* 1:13–3(d) and (e) are merely the technique by which the criminal and quasi-criminal courts throughout the State are notified of the identity of corpo-

rate sureties whose bonds are unacceptable because they are in uncured default.

There is a final matter we must address. When Capital Bonding brought the federal action to which we have referred, it did so in its name alone seeking a dispositive adjudication of the issues it had raised. The *modus operandi* of the surety companies for which it is managing agent, including the three appellants in these cases, is different and has imposed an undue burden on the administration of appellate justice. Rather than making a global challenge in a single litigation, what these sureties and others in the same general management group have done is to appeal virtually every individual judgment of forfeiture entered pursuant to *R.* 3:26–6 since its amendment. In those cases in which the defendant was eventually recaptured, whether or not the surety had anything, or anything much, to do with the recapture, it has moved for remission or exoneration and has appealed from the resulting judgment. Those cases are fact-sensitive, and this court has already consolidated and decided many of them although many more are still pending. *See, e.g., State v. Clayton,* 361 *N.J.Super.* 388, 825 *A.*2d 1155 (App.Div.2003); *State v. Harmon,* 361 *N.J.Super.* 250, 825 *A.*2d 515 (App.Div.2003); *State v. Dillard,* 361 *N.J.Super.* 184, 824 *A.*2d 1100 (App.Div.2003). Where, however, the defendant is apparently still a fugitive and remission or exoneration cannot be sought, the appeal from the judgment of forfeiture is based on the identical constitutional arguments as those raised here, identically phrased by submission of verbatim briefs, and answered by the Attorney General in verbatim briefs. Hundreds of such appeals have been filed in the last several years, but because the appellant saw fit to withdraw or settle them as they were calendared, these asserted constitutional issues were not adjudicated, and the stream of individual "verbatim" appeals therefore continues. All have to be individually processed and otherwise dealt with, and the resulting undue administrative burden on the Appellate Division has been acute.

Now, however, that these so-called constitutional issues have been adjudicated by this opinion and the constitutional issues found to be frivolous, we shall identify all pending appeals raising identical issues and no other issues, both those appeals already briefed and those unbriefed appeals which have full explanatory statements of identical issues raised in the notice of appeal and case information statement. This court will then consider *sua sponte* summary dispositions of all such appeals.

The judgments appealed from in the seventeen cases herein consolidated are affirmed.