NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3961-17T2

ABC BAIL BONDS, INC.,

       Plaintiff-Appellant,

v.

GLENN A. GRANT, in his official
capacity as Acting Administrative
Director of the Administrative
Office of the Courts,

       Defendant-Respondent.

> **APPROVED FOR PUBLICATION**
>
> **June 3, 2019**
>
> **APPELLATE DIVISION**

Argued March 6, 2019 – Decided June 3, 2019

Before Judges Alvarez, Nugent and Reisner.

On appeal from Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. C-000075-17.

John S. Furlong argued the cause for appellant (Furlong & Krasny, attorneys; John S. Furlong, of counsel and on the brief).

Joseph C. Fanaroff, Assistant Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Joseph C. Fanaroff, on the brief).

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

Plaintiff ABC Bail Bonds, Inc., appeals from the trial court's April 6, 2018 order dismissing its complaint challenging the Supreme Court's authority to revise the guidelines for bail forfeiture remittitur.  We affirm for the reasons stated in Judge Paul Innes's written opinion and the reasons stated below.

As in the past, the Administrative Office of the Courts (AOC), under the Director's signature, issued a directive regarding remittitur—in this case, the disputed Administrative Directive #22-17, "Bail and Bail Forfeitures--Revisions to Procedures and Forms" (Aug. 7, 2017)—intended to conform the prior guidelines to newly adopted amendments to Rules 3:26-6 and 7:4-5.  The amended rules, like the Directive, were issued after a State of New Jersey Commission of Investigation (SCI) report, Inside Out, Questionable and Abusive Practices in New Jersey's Bail-Bond Industry (May 2014).  The SCI report was highly critical of the State's bail bond system, and resulted in the Court's creation of the Bail Judge Subcommittee of the Conference of Criminal Presiding Judges (BJS) to evaluate the State's bail system, including the bail forfeiture recovery process.

The February 2016 BJS report recommended revisions to the standards for remission of bail forfeitures, making the length of time a defendant was a

2

fugitive the primary factor for consideration. Only when a judge finds "exceptional circumstances," should remission be allowed beyond one year. After the report was published, the rules were amended, providing that remission of forfeited bail accord with the revised remission guidelines.[1]

ABC filed a complaint seeking declaratory judgment after the issuance of the Directive, alleging that it was an unconstitutional encroachment on legislative authority, should be applied only prospectively, and effectuated an unlawful material change in the terms of existing surety-bond contracts. Retroactivity is a key issue for ABC, which contends that it effectively stopped writing bonds in New Jersey after the adoption of the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26, but continues to have millions of dollars outstanding in potential liability because more than a thousand bonds remain in place as of September 2017.

The parties agreed that no discovery was necessary, and that the matter could be resolved summarily under Rule 4:67-1. After hearing oral argument, Judge Innes dismissed the complaint on summary judgment.

---

[1] After the entry of a judgment of forfeiture, it may "be set aside, in whole or in part, pursuant to the court rules, and/or administrative directives, including but not limited to the Revised Remission Guidelines, upon such conditions as [the court] imposes." R. 3:26-6(b); R. 7:4-5(b).

Judge Innes found that ABC had not met its burden of proof establishing that the Directive was unconstitutional. He reasoned that the revised guidelines were fashioned to address an important problem greatly affecting the public interest, were not arbitrary and unreasonable, and were a proper exercise of police power. Thus, he dismissed the first count of ABC's complaint.

With regard to count two, Judge Innes concluded, after applying the "sole outcome" test,[2] that the revised guidelines embodied only procedural devices intended to advance the efficient administration of justice. Additionally, since the revised guidelines left untouched a trial judge's ultimate authority to decide the matters at his or her discretion, including the grant of remittitur beyond the year a defendant was in fugitive status when "extraordinary circumstances" are found, they did not outright control a judge's decision-making. Hence, although the guidelines dictated process, the final

_____

[2] The "sole outcome" test is used to determine whether a rule is substantive or procedural for purposes of rule interpretation. While substantive law defines rights and duties, procedural law provides the mechanism through which such rights and duties are enforced in the courts. Winberry v. Salisbury, 5 N.J. 240, 247-48 (1950). "If the rule can determine in and of itself the outcome of the proceeding, it is generally substantive. If it is but one step in the ladder to final determination and can effectively aid a court function, it is procedural . . . and within the Supreme Court's power of rule promulgation." New Jersey State Bar Ass'n v. State, 387 N.J. Super. 24, 48-49 (App. Div. 2006) (quoting Suchit v. Baxt, 176 N.J. Super. 407, 427 (Law Div. 1980)).

A-3961-17T2

decision as to the merits, as always, rested with the judge deciding the matter based on the proofs presented in the individual case.

Judge Innes did not consider the guidelines to impinge on contractual rights, and dismissed count three accordingly. He opined that, by placing bonds with the judiciary, bail bondsmen and the surety had submitted to the Court's authority to control the administration of the criminal justice system. And that system had been subject to the Court's control, rules, and guidelines since 1958. He further rejected ABC's argument that the Directive should be applied only prospectively, because it was based on case law addressing substantive, not procedural, changes in the law.

On appeal, ABC raises the following points of error:

> POINT ONE
> THE TRIAL COURT ERRED IN FINDING THE ENACTMENT OF THE REVISED REMISSION GUIDELINES FOR RESOLVING BAIL FORFEITURE CASES A LAWFUL EXERCISE OF THE COURT'S RULE-MAKING POWER UNDER ARTICLE VI OF THE NEW JERSEY CONSTITUTION.
>
> POINT TWO
> THE TRIAL COURT ERRED IN RULING THE REVISED REMISSION GUIDELINES FOR RESOLVING BAIL FORFEITURE CASES APPLY RETROACTIVELY.

A-3961-17T2

I.

Our review of the trial court's summary judgment order is de novo.  See

Templo Fuente DeVida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199

(2016).  We employ the same standard on appeal as did the trial court initially

in deciding the motion.  Ibid.; Brill v. Guardian Life Ins. Co. of Am., 142 N.J.

520, 540 (1995).

It is well-established that the Court has rule-making authority over all

state courts.  See N.J. Const. art. VI, § 2, ¶ 3; see also Winberry, 5 N.J. at

247-48.  As Judge Innes observed, ABC bears the burden of overcoming the

presumption of reasonableness that attaches to the Court's rule-making

authority.  Am. Trial Lawyers Ass'n v. N.J. Sup. Ct., 126 N.J. Super. 577, 589-

90 (App. Div. 1974).

We have said:

> the Court's constitutional authority over practice and
> procedure and consequently over the administration of
> justice by the court system . . . "flows from and is
> vested by organic law.  It is necessarily paramount and
> exclusive as to matters that are central to the judiciary.
> The Court's authority with respect to the
> administration of the courts is far-reaching; it
> encompasses the entire judicial structure and
> necessarily covers all aspects and incidents related to
> the justice system."
>
> [State v. Simpson, 365 N.J. Super. 444, 450 (App.
> Div. 2003) (citations omitted).]

In Simpson, a bail bond company unsuccessfully challenged the then newly instituted procedure whereby insurers who did not satisfy forfeited bails were removed from a registry authorizing them to write bonds, and barring them from issuing new bonds. We observed:

> [i]t is difficult to conceive of a matter more central to the administration of the criminal justice system than the appearance of defendants before the court as the court requires. At the same time, the Court has the obligation to protect the constitutional right to bail. But that constitutional right is clearly qualified by, among other limitations, compliance with the conditions of bail not only by the principal but also by the surety.
>
> [Id. at 451.]

Both legislative and executive authority are also implicated in the regulation and control of "the bail bond business." Id. at 452. Furthermore, "[t]here is no cognizable theory based on separation of powers or any other doctrine that could reasonably restrain the Court from taking such a step to protect the administration of the criminal courts." Ibid. If the Court can lawfully ban insurers from issuing bail bonds until they satisfy outstanding judgments, surely the Court can promulgate guidelines for remission.

Simpson followed the Court's precedents regarding the subject. Thus, ABC's contention that the revision is unconstitutional, or an overreach into the Legislature's province, must fail because of the Court's well-established

obligation to administer the criminal justice system while protecting a defendant's right to bail. The Directive does not exceed the Court's rule-making authority, does not impermissibly modify the Court's remittitur precedents in <u>Hyers-Peace</u>,[3] and does not make substantive law through rule-making. The SCI and BJS reports detailed the serious problems around the state in the collection of forfeited bails, the lack of uniformity in collection practices, and the shockingly low percentage of funds bail bond companies actually paid. The Directive merely recharts the prior approach to the forfeiture and remission of bails in order to ensure "compliance with the conditions of bail not only by the principal but also by the surety." <u>Simpson</u>, 365 N.J. Super. at 451.

---

[3] The <u>Hyers</u> court expanded on the prior version of <u>Rule</u> 3:26-6(b) permitting bail to be set aside if its enforcement was not required "in the interests of justice." <u>State v. Hyers</u>, 122 N.J. Super. 177, 180 (App. Div. 1973). Finding this standard alone to be "too restrictive" the court introduced several additional factors to be considered. <u>Ibid.</u> Soon after, the Supreme Court approved of the <u>Hyers</u> criteria. <u>State v. Peace</u>, 63 N.J. 127, 129 (1973) (adopting the factors outlined by <u>Hyers</u>, and adding the "intangible element of injury to the public interest in almost any case where a defendant deliberately fails to make an appearance" should also be considered). The "<u>Hyers-Peace</u>" factors were further refined by Judge Pressler in <u>State v. Clayton</u>, 361 N.J. Super. 388, 393 (App. Div. 2003), and eventually incorporated into the revised 2007 and 2008 Remittitur Guidelines.

N.J.S.A. 2A:162-8 vests in trial courts the discretion to fix the amounts of remittitur. That authority remains unaltered by the Directive, in fact, the first page states:

> The decision to remit bail, as well as the amount of bail, are matters within the sound discretion of the trial judge. This exercise of discretion should adhere to the following policy concerns that have been expressed over the years: (1) The necessity of providing an incentive to the surety to take active and reasonable steps to recapture a fugitive defendant, and; (2) That if remission were unreasonably withheld, corporate sureties might be overcautious in their willingness to post bail.
>
> [Administrative Directive #22-17, "Bail and Bail Forfeitures -- Revisions to Procedures and Forms" (Attachment D, Revised Remission Guidelines) (Aug. 7, 2017).]

Certainly, as ABC points out, the one-year "cap" is a significant addition to case law and prior guidelines:

> The court's primary focus under these Guidelines in determining whether to set aside forfeiture and the amount to remit is the length of time the defendant is a fugitive. See factor 1. This factor is calculated from the date of the defendant's failure to appear in court and the court's issuance of a bench warrant. The remission amount is based upon defendant's time at large, which is limited to a one-year period. Thereafter, 100% of the bail is forfeited unless exceptional circumstances are demonstrated by the surety.
>
> [Ibid.]

But the Directive, by establishing parameters within which discretion is to be exercised in the ordinary course, nonetheless retains the trial court's authority to go beyond the term when it finds "exceptional circumstances" have been established.

The Court clearly has the authority to revise the remittitur guidelines after the amendments to the rules. The changes were procedural in nature, and ABC's argument does not convince us otherwise. See Winberry, 5 N.J. at 247-48; Simpson, 365 N.J. Super. at 451.

## II.

ABC also contends that the Directive interferes with vested rights in bonds it has issued, and that it effectuates a material change to existing bail bond contracts.[4] This argument is not convincing.

There can be no vested right in bail money forfeited to a court attributable to a defendant's failure to appear; it is illogical to suggest otherwise. Despite ABC's characterization, a failure to appear triggering forfeiture is simply not the presumed outcome of a defendant's release on bail. Moreover, ABC presented no legally competent evidence to support its claim

---

[4] ABC's counsel indicated at oral argument that ABC wished to waive the argument regarding a material change of circumstances. Because it was raised in the brief, we nonetheless address the point here.

A-3961-17T2

that the revised guidelines materially increased its risk on the outstanding bonds. See State v. Ceylan, 352 N.J. Super. 139, 143 (App. Div. 2002).

Woven into ABC's argument is the point that its purported contractual entitlements require the guidelines to be applied prospectively only. The caselaw ABC cites in support of this position, however, relates to substantive changes in the law, not procedural ones. It is assumed that defendants appear when released on bail, and that ABC and all other sureties will engage in supervisory efforts intended to guarantee a defendant's appearance in court as required.

## III.

The Directive effectuates procedural, not substantive changes. It is not unconstitutional, is not an unlawful exercise of the Court's supervisory authority, and does not constitute a material change to existing contracts. It will be applied retroactively.

One final point. ABC suggests that retroactive application will create an administrative nightmare for the judiciary. ABC's brief states:

> It is difficult to calculate the exact number of motions for exoneration, typically accompanied by an offer of surrender, that will ensue in the event of retroactive application. But plaintiff alone had roughly 1046 open Superior Court bonds with nearly $82,000,000 in potential liability for payment of claims as of July 31, 2017, shortly before the complaint was filed.

11

In Simpson, Judge Pressler noted that hundreds of appeals had been filed in the years immediately before the opinion,

> but because the appellant saw fit to withdraw or settle them as they were calendared, these asserted constitutional issues were not adjudicated, and the stream of individual "verbatim" appeals therefore continues. All have to be individually processed and otherwise dealt with, and the resulting undue administrative burden on the Appellate Division has been acute.
>
> [365 N.J. Super. at 453.]

Now that ABC's challenge to the Directive has been addressed, we anticipate that bail bond companies, including this plaintiff and all others, will be able to litigate or settle their exoneration claims more efficiently based on the clear standards set forth in the Directive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3961-17T2